FILED

2025 AUG 15 PM 2:33

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

IN THE US DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

MONSIEUR SHAWNELLIAS BURGESS

PLAINTIFF

V.

CASE NO.

**JURY DEMAND**

BRADFORD HILLS HOA, METROPOLITIAN PROPERTY MANAGEMENT LLC,

CHRISTOPHER CUMMINGS, JAMES SUMMAR, JOHN PYLE,

LINDSAY VRABIC, YORDAN PORASHKA & KATHY HOLBROOK

DEFENDANTS

PLAINTIFF'S INITIAL COMPLAINT

Federal Jurisdiction

Plaintiff, an African American/Native American is bringing discrimination claims under the Fair Housing Act (FHA), also known as Title VIII of the Civil Rights Act of 1968, which prohibits discrimination in housing based on race, color, religion, sex, familial status, national origin, and disability. This includes discrimination in the sale, rental, and financing of housing, as well as other housing-related activities. The Fair Housing Act is codified under Title 42, Chapter 45 of the United States Code (42 U.S.C. Chapter 45). Specifically, the core prohibitions against housing discrimination are found in 42 U.S.C. § 3604. Plaintiff claims that the Defendants have taken retaliatory and discriminatory actions against him because of his successful lawsuit against the HOA. These actions include illegal fines and harassment. The Court has jurisdiction under Federal Question.

To win a claim against an HOA under the Fair Housing Act, a plaintiff generally needs to demonstrate the following elements:

1. **Membership in a Protected Class:** You must be a member of a group protected by the FHA. This includes race, color, religion, sex (including gender identity and sexual orientation), disability, familial status, and national origin.

- **Plaintiff is an African American/Native American which are members of the protected classes under the FHA.**

2. **Qualification for the Housing Opportunity:** You need to show that you were otherwise qualified for the housing opportunity at issue. This might involve demonstrating sufficient income, a good rental history, or other relevant criteria, depending on the specifics of the situation.

   - **Plaintiff is a homeowner and member of the Bradford Hills HOA.**

3. **Adverse Action by the HOA:** The HOA must have taken an adverse action against you. Examples include refusing to rent or sell to you, applying different terms or conditions for housing, harassment, or retaliation.

   - **The Defendants have harassed, discriminated and retaliated against the Plaintiff because he won his state case (20C-1835) by breaching the settlement agreement, ignoring a court's declaration that he is not in violation of the HOA's CCRs and trying force him to violate Metro Ordinance 8.04.110 (formerly 8.08.020). The Defendants have fined the Plaintiff despite a state court determining that the HOA doesn't have the authority to levy fines pursuant to its CCRs.**

4. **Discriminatory Motivation or Effect:** This can be established in a few ways:

   - **Discriminatory Intent (Disparate Treatment):** You demonstrate that the adverse action was motivated by discriminatory intent based on your protected class membership. This can be difficult to prove, as discrimination often occurs subtly. Evidence might include a pattern of discriminatory actions, statements made by HOA members, or treating similarly situated individuals differently.

   - **Discriminatory Effect (Disparate Impact):** Even without direct evidence of discriminatory intent, you can show that a seemingly neutral policy or practice of the HOA has a disproportionately negative effect on a protected group. The HOA may then need to prove that the policy serves a legitimate, nondiscriminatory interest, and you can counter by showing that the interest could be achieved with a less discriminatory alternative.

     1. **The Defendants motivation was based on Plaintiff's race and his status as a victor in the previous legal case (20C-1835). In addition the Defendants have demonstrated Selective Enforcement of the HOA's rules which lists that Homeowners are required to abide by the pet laws to which Plaintiff is but the HOA has illegally fined him for following their written rule. Also, the HOA for the 2nd time is not following the CCRs mandatory enforcement process (Judge Binkley determined that the HOA hadn't followed the CCRs outlined enforcement process which required enforcement by means of litigation in a court of law or a court of equity.)**

## Standing

Federal courts have consistently interpreted the FHA to confer broad standing, limited only by Article III requirements. In Fair Housing Auth. v. Montgomery Newspapers, the Third Circuit reaffirmed that prudential standing requirements do not apply to FHA claims. The court cited Supreme Court precedent, notably Havens Realty Corp. v. Coleman, holding that any person or organization suffering a "distinct and palpable injury" due to discriminatory housing practices may bring suit. Fair Housing Auth. v. Montgomery Newspapers 1998, 3d Cir., 141 F.3d 71.

## Private Right Of Action

The Fair Housing Act (FHA), codified at 42 U.S.C. §§ 3601 et seq., expressly provides a private right of action in federal court for individuals who allege they have been injured by discriminatory housing practices. This right is well-established and has been recognized and discussed in both statutory text and case law.

The statutory mechanism for private enforcement is found in 42 U.S.C. § 3613, which allows "an aggrieved person" to commence a civil action in an appropriate United States district court within a specified period after the alleged discriminatory housing practice has occurred. This provision is designed to ensure that victims of housing discrimination have direct access to the federal courts to seek redress, including injunctive relief, actual and punitive damages, and attorney's fees.

Case law confirms this private right of action. For example, in Fair Hous. Coun. Etc. v. Eastern Bergen Cty. M.I.S., the court explicitly recognized that Title VIII of the Civil Rights Act of 1968 (the FHA) provides two methods of enforcement: administrative complaints to HUD and direct civil actions in federal district court by aggrieved persons. The court noted that the aggrieved person may commence a civil action in federal court to enforce the rights granted or protected by the Act, and that such actions may be brought without regard to the amount in controversy. Fair Hous. Coun. Etc. v. Eastern Bergen Cty. M.I.S. 1976, D.N.J., 422 F. Supp. 1071.

Further, the Supreme Court and various circuit courts have consistently interpreted the FHA as conferring a private right of action, emphasizing that private enforcement is a central component of the Act's remedial scheme. The legislative history and subsequent amendments, particularly the Fair Housing Amendments Act of 1988, reinforced and expanded these private enforcement mechanisms, reflecting Congress's intent to make private lawsuits a primary tool for eradicating housing discrimination. Walnut Creek Manor v. Fair Employment & Housing Com. 1991, Cal., 54 Cal.3d 245.

## Supplemental Jurisdiction

The Federal Court has supplemental jurisdiction under 28 U.S.C. § 1367, which allows federal courts to hear state law claims that are related to the federal claims being litigated.

## Parties

### Plaintiff

Monsieur Shawnellias Burgess (Pro Se), is a Tennessee Resident. Plaintiff resides at 3040 Cody Hill Road, Nashville, TN 37211 and is a member of the Bradford Hills HOA.

### Defendants

1. Bradford Hills Homeowners' Association, Inc., a Tennessee Not For-Profit Corporation. The registered agent listed at the TNSOS is Metropolitan Property Management, LLC, 4521 Trousdale Dr., Nashville, TN 37204.
2. Metropolitan Property Management, LLC, a Tennessee For-Profit Corporation. The registered agent listed at the TNSOS is Metropolitan Property Management, LLC, 4521 Trousdale Dr., Nashville, TN 37204.
3. Christopher Cummings is a Tennessee Resident. Mr. Cummings is listed as a member of the HOA's Board and President. Defendant's residence is 5632 Seesaw Road, Nashville, TN 37211.
4. James Summar is a Tennessee Resident. Mr. Summar is listed as a member of the HOA's Board. Defendant's residence is 953 Fallview TRL, Nashville, TN 37211.
5. John Pyle is a Tennessee Resident. Mr. Pyle is listed as a member of the HOA's Board and Treasurer. Defendant's residence is 3428 Cobble St., Nashville, TN 37211.
6. Lindsay Vrabic is a Tennessee Resident. Ms. Vrabic is listed as a member of the HOA's Board and Vice-President. Defendant's residence is 1457 Woodfield Drive, Nashville, TN 37211.
7. Yordan Porashka is a Tennessee Resident. Yordan Porashka is listed as a member of the HOA's Board. Defendant's residence is 6153 Bradford Hills Dr., Nashville, TN 37211.
8. Kathy Holbrook is a Tennessee Resident. Ms. Holbrook is employed by Metropolitan Property Management, LLC as a property manager. Her office is located at 4521 Trousdale Dr., Nashville TN 37204.

## Case

Comes now the Plaintiff acting on his own behalf filing his Initial Complaint against the Defendants. Plaintiff's claims against the Defendants are Discrimination, Harassment and Retaliation (under Title VIII of the Civil Rights Act of 1968, this act prohibits discrimination in housing based on race, color, national origin, religion, sex, familial status, or disability), Selective Enforcement (HOAs are expected to enforce their rules and regulations fairly and consistently across all members of the community), Breach of Fiduciary Duty by both the HOA and the Board (both fail to comply with the laws and their governing documents as well as inconsistent enforcement of any rules and regulations), Ultra Vires Acts (both the Board and HOA have taken actions that exceed their powers under the HOA's CC&R's against the Plaintiff), Breach of the Settlement Contract, (the HOA and Board have violated the Settlement Agreement with the Plaintiff) and Negligence (Negligence in the context of an HOA means failing to exercise reasonable care in managing and maintaining the community, as outlined in the governing documents and state laws. Fining a homeowner for something a court has

explicitly declared not a violation is seen as a failure of the HOA to act with reasonable care, or even a deliberate disregard of its responsibilities).

Racism, Harassment and Retaliation are the only reasons for the continued harassment and illegal fines

The Defendants had no legitimate reason to fine the Plaintiff for signs in his yard. The Plaintiff bases this on:

1. Judge Binkley, out the Circuit Court of Davidson County, had already issued a Final Order declaring that the Plaintiff was not in violation of the HOA's CC&R's for signs in his yard or noise nuisance.
   a. Judge Binkley had also determined that the HOA didn't have authority to issue fines under its CC&R's.
2. The HOA and the Plaintiff had reached a settlement after Judge Binkley's Order, that they would not appeal his decision (his decision was final) and that both parties were "to release and forever discharge the other from all claims, demands, actions and liabilities, whether direct or indirect, fixed or contingent, known or unknown, accrued or unaccrued … claims to have against each other for or by reason of any matter, act, omission, or thing prior to the date … including but not limited to claims and potential claims that could have been asserted in connection … in the above referenced lawsuit."
   a. The parties acknowledged that the agreement constituted a general release and hereby waived any and all claims and potential claims for damages against the other that exist as of the date of signing, even if the claims are not known to them.
3. Metro Ordinance 8.04.110 (formerly 8.08.020) requires signs to be posted when a guard dog lives on the premises. (See Exhibit 24) Plaintiff has 4 guard rottweilers and has had such dogs since 2010. He has been in compliance with the ordinance since 2010 with signage in his yard as required by the ordinance.

Plaintiff contends that when the HOA issues fines to him as a homeowner after a court has declared there is no violation, and he as the homeowner belongs to a minority group, it is undeniably that the HOA's actions are clearly racism, harassment, and/or retaliation.

## FACTS

1. Davidson County Circuit Case 20C-1835 (was initially filed in General Sessions Court in August of 2020 but was removed under TCA 16-15-732 by Defendants) began because the HOA and the management company at the time Timmons Properties, illegally fined Plaintiff for signs in his yard (the exact same signs in his yard currently) and for noise nuisance. (See Exhibit 1)
2. Case 20C-1835 concluded on 12/15/23, when Judge Joe Binkley issued a Final Order declaring that Plaintiff was not in violation of the HOA's CC&R's. (See Exhibit 2, page 8)
   a. Judge Binkley found the following: (See Exhibit 2, page 7)

i. The court finds that nowhere in the Bradford Hills' HOA's CCRs is there an enforcement remedy of fines for violations of the CCRs.

ii. The court finds Article VII, section 1, entitled **Enforcement**, clearly states the Homeowners Association or any owner of property in the Homeowners Association are authorized to enforce the CCRs, but **that enforcement must be initiated by a proceeding in a court of law or in a court of equity, neither of which was done in this case.**

iii. Article VI, section 3, of the CCRs provides there shall be no noxious or offensive activity which **may become an annoyance or nuisance to the neighborhood.** The court finds that the terms **"may become an annoyance"** or **"nuisance" are too vague and ambiguous are therefore, unenforceable.** As a result, since the ambiguities must be resolved against the party seeking to enforce the restrictions, those ambiguities are resolved against the Defendant Bradford Hills HOA.

3. Judge Binkley ordered the HOA to return the fines to Plaintiff. (See Exhibit 2, page 8)
4. The HOA returned the $100 in fines on 2/1/24. (See Exhibit 3)
    a. Exhibit 3 is a Homeowner Transaction History. The credit contains a note that says "apply credit per PM (property manager) & BOD (HOA Board of Directors).
    b. This serves as proof that the Board of Directors and the property manager Kathy Holbrook were aware of the ruling by Judge Binkley or were advised of it by their lawyer.
    c. Metropolitan Property Management was on board as the new management company (replacing Timmons Properties) as they indicate in their welcome letter dated 12/6/23. (See Exhibit 4)
    d. Kathy Holbrook and her employer were involved in the return of the previous fines. (See Exhibit 3)
5. On or around 1/12/24, Plaintiff and the HOA and its Board finalized a settlement agreement whereby the parties agreed not to appeal Judge Binkley's Final Order.
    a. With the settlement agreement the parties essentially executed a general release of all claims and potential claims known or unknown.
    b. The settlement agreement contained a confidentiality clause which will require a court order to be produced as evidence if this Court deems it necessary.
        i. Plaintiff contends that the "compulsory counterclaim" mentioned in the Defendants' removal to Circuit Court that was never filed is included in the general release clause of the settlement agreement.
6. On 3/26/25, the HOA and property manager began their discriminatory, harassing, retaliatory actions by sending Plaintiff a notice of violation for signs in his yard again. (See Exhibit 5)
7. On 3/27/25, Plaintiff responded by saying "I'm going to assume this was sent in error." (See Exhibit 6)

8. On 3/28/25, Ms. Kathy Holbrook responded with "unfortunately, it is not a mistake." (See Exhibit 7)
    a. She went on to say that they approved in November 2024 amendments to the Bylaws. (See Exhibit 7)
    b. This amendment was signed by Board Member James Summar and prepared by attorney Scott Weiss. (See Exhibit 8)
    c. The amendment attempts to legally add a power unto the Board through its Bylaws which isn't legal.
    d. They added section (f) adopt and publish rules, regulations and standards governing individual "lot(s)" provided via the "Rules and Regulations committee (ART IX). All new rules, regulations and standards shall have at minimum a sixty (60) day grace period for all "lots" to comply or submit a waiver to the Board. And to establish penalties for the infraction thereof. (See Exhibit 8, page 2)
        i. Plaintiff contends that the entire amendment is illegal and in direct contrast to the powers issued by the HOA's CC&Rs. (See Exhibit 9)
            1. The CC&Rs grant the HOA and it Board the power to control the "Common" Areas. This is the HOA and Board's primary directive and with it comes the power of annual assessments to fund that objective. (See Exhibit 9)
            2. The only power granted to the HOA and Board over individual lots is architectural control. (See Exhibit 9, page 10)
            3. The only other restrictions are located on page 10-11. (See Exhibit 9, pages 10-11)
            4. The original Bylaws clearly state that any conflict between the Bylaws and the Articles of Incorporation, the Articles Control and any conflict between the Bylaws and the CC&Rs and the CC&Rs control. (See Exhibit 10, page 8, Article XIII, section 2)
            5. The powers of the Board are clearly spelled out in the original Bylaw Article VII section 1(a): adopt and publish rules and regulations governing the use of the Common Area and facilities…(See Exhibit 10, page 4)
            6. The Articles also spell out the purpose and powers of the HOA. (See Exhibit 11, page 1, Article IV)
                a. "The specific purpose of for which it is formed are to provide for maintenance, preservation and architectural control of the residence lots and Common Area…(See Exhibit 11, page 1, Article IV)
                b. The Articles go on to say that the HOA is to perform all of the duties and obligations set forth in the CC&Rs. (See Exhibit 11, page 1-2, Article IV(a))
                c. Architectural Control is spelled out in the CC&Rs. (See Exhibit 9, page 10, Article V)

d. Plaintiff contends that the CC&Rs are what gives the HOA powers and authority to act, the Bylaws do not.

9. On 3/28/25, Plaintiff responded with I'm not in violation. (See Exhibit 12)
10. On 3/29/25, Ms. Holbrook responded by reiterating the sign policy. (See Exhibit 13)
11. On 3/30/25, Plaintiff responded with "proceed at your own risk". (See Exhibit 14)
12. On 3/31/25, Ms. Holbrook responded with Thanks. (See Exhibit 15)
13. On 4/30/25, The HOA and Ms. Holbrook issued a fine of $50 for the signs in Plaintiff's yard. (See Exhibit 16)
14. The $50 was taken from Plaintiff's account on 4/28/25. (See Exhibit 3)
15. On 5/4/25, Plaintiff emailed Ms. Holbrook a letter. (See Exhibit 17)
16. The letter demanded that the HOA return the fines. (See Exhibit 18)
    a. The Plaintiff's letter spells out why he is not in violation: (See Exhibit 18)
        i. By Court Order (Case 20C-1835)
        ii. By Contract/Settlement Agreement,
        iii. By Metro Nashville Ordinance (Signs for guard dogs)
    b. The Plaintiff's letter also advised to contact their previous litigation attorney who drafted the settlement agreement. (See Exhibit 18)
17. On 5/5/25, Ms. Holbrook responded with the Board is requesting documentation regarding the signs in your yard. (See Exhibit 19)
18. On 5/5/25, Plaintiff responded by stating that the Board should have all the documentation in its possession. Also, the letter advised that their attorneys should have knowledge and access to the documents. (See Exhibit 20)
19. On 8/1/25, Plaintiff sent the HOA and manager another letter. (See Exhibit 21)
20. The letter demanded that the fines be reversed by 8/8/25 or legal action will be taken. (See Exhibit 22)
21. On 8/13/2025, Plaintiff commenced this lawsuit in Federal District Court.

## Claims

### Fair Housing Act

The Fair Housing Act (FHA), codified at 42 U.S.C. §§ 3601 et seq., prohibits discrimination in housing based on race, color, religion, sex, familial status, or national origin. Key provisions include:

- **Section 3604(b):** Prohibits discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of protected characteristics.
- **Section 3617:** Makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right protected by the FHA.

HOAs are not exempt from the FHA. Courts have recognized that HOAs, even if not direct providers of housing, can be liable under the FHA if their actions affect the use and enjoyment of housing by residents, particularly if those actions are discriminatory

or interfere with protected rights. Fair Hous. Ctr. of Cent. Ind., Inc. v. New 2021, S.D. Ind., 577 F. Supp. 3d 908.

22. Plaintiff contends that if a court has declared that a minority homeowner is not in violation of the CCRs, and the HOA continues to fine that individual, the conduct is actionable under the FHA as it is motivated by discriminatory intent. The continued imposition of fines, especially after judicial exoneration, is seen as interference with the homeowner's enjoyment of their property rights, and when it is shown to be racially motivated or selectively enforced (as is the case here), it constitutes a violation of Sections 3604(b) and 3617. Fair Hous. Ctr. of Cent. Ind., Inc. v. New 2021, S.D. Ind., 577 F. Supp. 3d 908.
23. Plaintiff contends that his race is the primary factor in the HOA's persistence to violate him for signs in his yard.
24. The individuals that inspect and Board/Committee members have seen Plaintiff out in his yard on many occasions since 1/1/24.
25. The deliberate violation of the Court's declaration shows that the HOA is intent on harassing the Plaintiff and interfering with his enjoyment of his property.

<u>Selective Enforcement</u>

Selective enforcement is recognized as a claim in Tennessee case law, including in the context of HOA disputes, though the doctrine is more commonly articulated in cases involving governmental or regulatory enforcement. The leading Tennessee appellate decision on selective enforcement is 421 Corp. v. Metropolitan Government of Nashville, which sets forth the elements and standards for such a claim. The court in 421 Corp. explained that persons making selective enforcement claims bear a heavy burden, as courts presume officials act in good faith and in accordance with the law. However, courts will intervene when enforcement decisions are based on impermissible considerations such as race, gender, religion, or other arbitrary classifications, or when enforcement is intended to deter or punish the exercise of protected rights. 421 Corp. v. Metro. Govt., Nashville 2000, Tenn. Ct. App., 36 S.W.3d 469.

To establish a selective enforcement claim in Tennessee, a plaintiff must prove two elements: first, that the enforcement authority singled out the plaintiff for adverse action while others engaging in similar conduct were not subject to the same enforcement; and second, that the decision to enforce was based on an impermissible consideration or purpose. The claimant must allege and prove that other non-prosecuted offenders engaged in essentially the same conduct, violated the same rule, and that the magnitude of their violation was not materially different. Additionally, the claimant must show that the enforcement was motivated by discriminatory purpose or effect, such as targeting a protected class or punishing the exercise of a protected right. 421 Corp. v. Metro. Govt., Nashville 2000, Tenn. Ct. App., 36 S.W.3d 469.

While 421 Corp. involved municipal enforcement rather than an HOA, the principles articulated are applicable to HOA disputes, as HOAs are often treated as quasi-governmental entities in their enforcement of covenants and restrictions. The doctrine of selective enforcement is frequently invoked as an equitable defense in HOA litigation,

particularly when a homeowner alleges that the association enforces rules against some members but not others, or does so for improper reasons.

26. Plaintiff contends that if a court has already adjudicated that the homeowner is not in violation of the HOA's covenants or rules, any subsequent attempt by the HOA to impose fines for the same alleged violation should be viewed as arbitrary, capricious, or even retaliatory. This conduct supports a claim of selective enforcement, especially when the HOA does not similarly pursue fines against other homeowners who have been found not in violation under similar circumstances.
    a. Plaintiff contends that he is the only person to whom the HOA continues to fine after a court has declared him not in violation of the CC&Rs.
    b. Plaintiff contends that he is the only person abiding by the pet laws of Nashville that the HOA has tried to fine for the 3rd time. Each time the HOA gets a new management company, they start the whole fining about signs process.
        i. Despite the city of Nashville requiring signage, the HOA keeps trying to harass and intimidate him with illegal fines (the CC&Rs don't give the HOA the power to fine as Judge Binkley determined in his Final Order).
        ii. Plaintiff contends because of his race the HOA and Board persist.
        iii. The HOA continuously tries to prevent the Plaintiff from doing what is legally required of him.
27. The HOA doesn't do anything regarding parking on the streets (the CC&Rs require all parking to be in the driveway) but continuously tries to enforce a violation that has been declared a non-violation.
    a. Plaintiff contends that it is selective enforcement.

<u>Breach of Fiduciary Duties</u>

<u>HOA</u>

HOAs are generally recognized as owing fiduciary duties to their members, which include obligations of good faith, fair dealing, and adherence to the governing documents and applicable law. This duty is heightened by the quasi-governmental powers HOAs exercise over property owners, and courts have repeatedly emphasized that arbitrary or bad-faith enforcement of covenants can constitute a breach of fiduciary duty. Colorado Homes v. Loerch-Wilson 2002, Colo. App., 43 P.3d 718; Laurel Rd. Homeowners Ass'n, Inc. v. Freas 2018, Pa. Cmmw. Ct., 191 A.3d 938; Homeowners Ass'n v. Pilgrims Landing 2009, Utah, 221 P.3d 234.

In Colorado Homes v. Loerch-Wilson, the Colorado Court of Appeals recognized that a homeowners association owes a fiduciary duty to homeowners to enforce restrictive covenants in good faith and not arbitrarily. The court cited public policy concerns, noting that arbitrary enforcement could have a significant adverse impact on property value and enjoyment. The court held that breach of this duty is actionable independently of any contract, and that the economic loss rule does not bar such claims. Colorado Homes v. Loerch-Wilson 2002, Colo. App., 43 P.3d 718.

Similarly, in Laurel Rd. Homeowners Ass'n, Inc. v. Freas, the Pennsylvania Commonwealth Court acknowledged that, even where statutory remedies are unavailable, common law imposes fiduciary duties on HOAs and their directors. The court emphasized that judicial relief is available when a governing body acts fraudulently, in bad faith, or outside its authority. Laurel Rd. Homeowners Ass'n, Inc. v. Freas 2018, Pa. Cmmw. Ct., 191 A.3d 938.

This principle would apply directly to a situation where an HOA disregards a court's declaration and continues to fine a homeowner, as such conduct would be unauthorized and in bad faith.

The Utah Supreme Court, in Homeowners Ass'n v. Pilgrims Landing, adopted the Restatement (Third) of Property's articulation of a limited fiduciary duty owed by developers and those in control of HOAs. This duty includes compliance with and enforcement of governing documents and court orders, and the court recognized that breach of this duty is actionable in tort, outside the scope of the economic loss rule. Homeowners Ass'n v. Pilgrims Landing 2009, Utah, 221 P.3d 234.

28. Plaintiff contends that when a court has declared that a homeowner is not in violation of the HOA's covenants or rules, the HOA is bound by that judicial determination. If the HOA disregards the court's declaration and imposes fines regardless, it is acting outside its authority and in bad faith. Such conduct is not only a breach of the HOA's fiduciary duty, but also exposes the association to liability for damages resulting from its arbitrary and unauthorized actions.
    a. The HOA has clearly fined Plaintiff for signs in his yard after Judge Binkley declared that it was a violation as well as determined that the HOA doesn't have the authority to fine according to its CC&Rs.
        i. Plaintiff contends this is a breach of its fiduciary duties.

<u>Settlement Agreement</u>

The fiduciary duty owed by an HOA and its board to its members is well-established. This duty requires the HOA to act in good faith, with loyalty, and in the best interests of its members, and to comply with both governing documents and binding legal orders. Happ v. Creek Pointe Homeowner's Ass'n 2011, N.C. Ct. App., 717 S.E.2d 401; Robinson v. LaCasa Grande Condo. Ass'n 1990, Ill. App. Ct., 204 Ill. App. 3d 853; Laurel Rd. Homeowners Ass'n, Inc. v. Freas 2018, Pa. Cmmw. Ct., 191 A.3d 938.

29. Plaintiff contends that when a court order and a settlement agreement conclusively resolve a dispute—specifically finding the homeowner not in violation and waiving further claims—the HOA is contractually and equitably bound to honor that resolution.
30. If the HOA disregards the court's order and the settlement agreement (as is the case with these Defendants) by imposing new fines for the same alleged violation, it is not merely breaching the contract; it is acting in bad faith and contrary to its fiduciary obligations. Courts have consistently held that such conduct, especially when it is arbitrary, capricious, or motivated by improper purposes, constitutes a breach of fiduciary duty. Happ v. Creek Pointe Homeowner's Ass'n 2011, N.C. Ct.

App., 717 S.E.2d 401; Kun Jiang v. Haslet Park Homeowners Ass'n 2024, Del. Ch., C. A. 2023-0780-LM; Laurel Rd. Homeowners Ass'n, Inc. v. Freas 2018, Pa. Cmmw. Ct., 191 A.3d 938.

31. The business judgment rule, which generally protects board decisions made in good faith, does not shield actions that are irrational, in bad faith, or in direct contravention of binding legal agreements and orders. Happ v. Creek Pointe Homeowner's Ass'n 2011, N.C. Ct. App., 717 S.E.2d 401.
32. Recent decisions reinforce this principle. In Kun Jiang v. Haslet Park Homeowners Ass'n, the Delaware Court of Chancery denied a motion to dismiss a breach of fiduciary duty claim where the HOA was alleged to have acted arbitrarily and capriciously, including imposing fines without proper process and in violation of governing documents. Kun Jiang v. Haslet Park Homeowners Ass'n 2024, Del. Ch., C. A. 2023-0780-LM. The court recognized that such conduct, if proven, would support a claim for breach of fiduciary duty, especially where the harm is not unique to the plaintiff but could affect any member subject to similar treatment.
    a. Plaintiff contends that the HOA and Board in this case have imposed fines without proper process and in violation of governing documents and a court order. (this is the 2nd time the HOA and Board have imposed fines without proper process and in violation of governing documents)
    b. It is clear that the HOA and Board have breached their fiduciary duties.

<u>Board of Directors</u>

HOA boards are generally recognized as fiduciaries to their members, meaning they must act in good faith, with due regard for the interests of the homeowners, and in accordance with the governing documents and applicable law. Courts across jurisdictions have affirmed that board members must exercise their powers reasonably, avoid arbitrary or capricious conduct, and comply with procedural and substantive requirements when enforcing covenants or imposing fines. Kun Jiang v. Haslet Park Homeowners Ass'n 2024, Del. Ch., C. A. 2023-0780-LM; Laurel Rd. Homeowners Ass'n, Inc. v. Freas 2018, Pa. Cmmw. Ct., 191 A.3d 938; Homeowners Ass'n v. Pilgrims Landing 2009, Utah, 221 P.3d 234; Robinson v. LaCasa Grande Condo. Ass'n 1990, Ill. App. Ct., 204 Ill. App. 3d 853.

The prevailing consensus in the case law is that HOA boards breach their fiduciary duties when they act contrary to judicial determinations, especially by imposing fines or penalties after a court has found no violation. Such conduct is not only arbitrary and unreasonable, but also undermines the integrity of the association and the rights of its members. Courts have consistently provided remedies for homeowners in these circumstances, including injunctive relief and damages for breach of fiduciary duty. Kun Jiang v. Haslet Park Homeowners Ass'n 2024, Del. Ch., C. A. 2023-0780-LM; Laurel Rd. Homeowners Ass'n, Inc. v. Freas 2018, Pa. Cmmw. Ct., 191 A.3d 938; Homeowners Ass'n v. Pilgrims Landing 2009, Utah, 221 P.3d 234; Robinson v. LaCasa Grande Condo. Ass'n 1990, Ill. App. Ct., 204 Ill. App. 3d 853.

33. Plaintiff contends that when a court has adjudicated a dispute and declared that a homeowner is not in violation of the HOA's rules or covenants, that decision is

binding on the parties. The board is not permitted to relitigate the same issue or impose penalties that contradict the court's findings. Authorizing fines in direct contravention of a judicial determination is considered arbitrary, capricious, and unreasonable, and should constitute a breach of the board's fiduciary duties.

a. Plaintiff contends that the Board members authorized fines despite Judge Binkley's Final Order which amounts to a breach of fiduciary duty.
b. In addition, Judge Binkley determined that the Board does not have the authority to fine according to the CC&Rs.

Ultra Vires Acts

The Supreme Court of Tennessee has clearly articulated the ultra vires doctrine in the context of municipal and quasi-municipal corporations. In Allmand v. Pavletic, the Court explained that fundamental Tennessee law restricts municipalities and similar entities to exercising only those powers expressly or necessarily implied by their charters or enabling statutes. Actions taken outside those powers are ultra vires and are void or voidable. The Court emphasized that this doctrine, while often discussed in the context of private corporations, applies equally to municipal corporations and, by extension, to other corporate entities such as HOAs. The Court stated: "An act is ultra vires when it is 'beyond the scope of power allowed or granted by a corporate charter or by law'". Allmand v. Pavletic 2009, Tenn., 292 S.W.3d 618.

Further, City of Lebanon v. Baird reinforces that when a corporate entity, including a municipal corporation, acts outside the manner prescribed by its charter or governing documents, such acts are ultra vires. The consequences of an ultra vires act depend on the nature of the act and the equities involved, but the doctrine is well established in Tennessee jurisprudence. City of Lebanon v. Baird 1988, Tenn., 756 S.W.2d 236.

Tennessee law recognizes ultra vires as a valid basis for challenging the actions of corporate entities, including HOAs, when those entities exceed their lawful authority. Such claims are supported by binding Tennessee Supreme Court precedent and are consistent with the broader doctrine as applied to nonprofit and municipal corporations.

34. Plaintiff contends that a court order declaring a homeowner not in violation of HOA rules is a binding legal determination. If the HOA subsequently disregards this order and imposes fines for the same alleged violation, it is acting outside its lawful authority. Such conduct is not merely an error in the exercise of power, but a fundamental overreach—an act for which the HOA has no legal basis, as its authority is circumscribed by both its governing documents and the controlling judgment of the court.
    a. Clearly, the HOA and the Board have fined Plaintiff for the very thing that Judge Binkley's Order declared he was not in violation of. (See Exhibit 2, page 7)
    b. In addition, Judge Binkley has already determined that the HOA does not have the power to levy fines. (See Exhibit 2, page 7)

c. Judge Binkley also stated that the process for enforcement authorized in the CCRs is a proceeding in a court of law or a court of equity. Again the HOA has done neither. (See Exhibit 2, page 7)

d. This is a classic ultra vires act, subject to challenge and potential invalidation under Tennessee law and supported by persuasive authority from other jurisdictions. Allmand v. Pavletic 2009, Tenn., 292 S.W.3d 618; City of Lebanon v. Baird 1988, Tenn., 756 S.W.2d 236; Steele v. Diamond Farm Homes Corp. 2019, Md., 464 Md. 364; S. Tacoma Way v. State 2008, Wash. Ct. App., 146 Wn. App. 639.

e. It also applies where the settlement agreement is included in the analysis.

    i. When an HOA ignores a court's determination, enters into a settlement agreement waiving all claims, and then fines the homeowner again for the same conduct, it exceeds its authority under its governing documents and the law. This is a textbook ultra vires act, subject to challenge and potential invalidation under Tennessee law and supported by persuasive authority from other jurisdictions. Allmand v. Pavletic 2009, Tenn., 292 S.W.3d 618; City of Lebanon v. Baird 1988, Tenn., 756 S.W.2d 236; Steele v. Diamond Farm Homes Corp. 2019, Md., 464 Md. 364; S. Tacoma Way v. State 2008, Wash. Ct. App., 146 Wn. App. 639.

Breach of The Settlement Agreement

Settlement agreements between homeowners and HOAs are generally enforceable contracts. When a settlement agreement expressly waives all claims regarding specific CCR violations, the HOA is contractually barred from pursuing enforcement actions or fines for those same violations. The most directly relevant case is *Elnekave v. Via Dolce Homeowners Assn.*, which involved a dispute over whether an HOA could continue to enforce CCRs after entering into a settlement agreement that purported to resolve all claims related to certain violations. In *Elnekave*, the court examined the scope of the settlement and the authority of the parties who entered into it. The trial court found that the HOA had waived enforcement actions for work done up to the date of the settlement, except for certain excluded items (e.g., a steam shower), and that the settlement was intended to end the dispute over those specific violations. The appellate court, however, reversed the enforcement of the settlement due to procedural defects in the authority of the HOA's representative, but it did not dispute the principle that a valid settlement agreement can bar future enforcement actions for the same violations if properly executed and authorized. Elnekave v. Via Dolce Homeowners Assn. 2006, Cal. Ct. App., 142 Cal.App.4th 1193.

Confidentiality Clause In Settlement Agreement

Confidentiality clauses in settlement agreements are generally enforceable, but they often contain exceptions for disclosures "as required by law." This language is intended to ensure that parties are not in breach of the agreement when compelled by legal process or statutory obligation to disclose settlement terms. The most common scenario is when a party must

disclose the agreement in response to a subpoena, court order, or as part of a required filing in litigation.

The settlement agreement between the HOA and the Plaintiff contained a confidentiality clause.

When a plaintiff files a complaint, they may be required by law to attach or reference the settlement agreement, especially if the complaint seeks to enforce the agreement or alleges breach. In such cases, the "required by law" exception to the confidentiality clause would permit disclosure of the agreement's terms in the complaint, as this is a disclosure compelled by the legal process. Courts have recognized that confidentiality clauses cannot be used to prevent parties from complying with legal obligations, including the filing of necessary documents in court proceedings. Athan v. U.S. Steel Corp. 2021, E.D. Mich., 523 F. Supp. 3d 960; Athan v. U.S. Steel Corp. 2021, E.D. Mich., 523 F. Supp. 3d 960.

Plaintiff affirms that the Settlement Agreement with the HOA contained the "required by law" exception and with that stated he will now discuss the relevant parts of the agreement.

35. The Settlement Agreement's paragraph 2 Titled "Release" states the following: The Releasor and Releasee agree to release and forever discharge the other from all claims, demands, actions, damages, and liabilities (including attorney's fees), whether direct or indirect, fixed or contingent, known or unknown, accrued or unaccrued, that the Releasor had, has, or claims to have against each other for or by reason of any matter, act, omission, or thing prior to the date of this Agreement, including but not limited to all claims and potential claims that could have been asserted in connection with the complaint and amended complaints in the above referenced lawsuit. Releasor and Releasees acknowledge that this agreement constitutes a general release and hereby waive any and all claims and potential claims for damages against the other that exists as of this date, even if the claims are not known to them.
36. Plaintiff contends that the HOA breached the settlement agreement by fining Plaintiff for the very issue the parties agreed to release.
37. Several cases directly address the enforceability and scope of settlement agreements and general releases in the context of HOA disputes, especially where subsequent violations and fines are at issue.
    a. In *Elnekave v. Via Dolce Homeowners Assn.*, the California Court of Appeal examined a settlement agreement reached between homeowners and an HOA following a dispute over property damage and alleged violations of the HOA's covenants, conditions, and restrictions (CCRs). The settlement, which included mutual releases, was intended to resolve all claims related to the mold damage and repairs up to the date of the agreement. The court found that the HOA had waived enforcement actions for work done up to the settlement date, except for specific exclusions (such as a steam shower), and that the settlement was binding as to those issues. The case highlights that a general release in a settlement agreement can bar the HOA from pursuing

fines or enforcement actions for violations covered by the release, provided the scope of the release is clear and the parties intended to resolve those specific disputes. Elnekave v. Via Dolce Homeowners Assn. 2006, Cal. Ct. App., 142 Cal.App.4th 1193.

b. *Alleva v. Municipality of Anchorage* further reinforces the principle that a valid release within a settlement agreement will bar subsequent claims covered by the release. The Alaska Supreme Court emphasized the strong policy favoring the enforcement of settlement agreements and releases, noting that such agreements should be upheld according to their terms unless they purport to immunize future conduct that is intentionally tortious or grossly negligent, or violate a clear public policy. Alleva v. Municipality of Anchorage 2020, Alaska, 467 P.3d 1083.

38. Clearly, the HOA and Board have breached the Settlement Agreement.

<u>Negligence</u>

Negligence requires a duty, breach, causation, and damages. HOAs and their boards owe a duty to act in accordance with court orders and settlement agreements. Ignoring these instruments and imposing fines for the same violation is a clear breach. If this breach causes harm to the homeowner (e.g., financial loss, emotional distress, or further litigation), the elements of negligence are satisfied. Elnekave v. Via Dolce Homeowners Assn. 2006, Cal. Ct. App., 142 Cal.App.4th 1193; Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc. 2003, Cal. Ct. App., 110 Cal.App.4th 120.

39. Plaintiff contends that the Defendants' actions have met the requirements for negligence.
    a. They have ignored the court order by Judge Binkley,
    b. They have ignored the terms of the Settlement Agreement.
    c. They have ignored Judge Binkley's findings that they do not have the power to fine under the CCRs. (2nd time they've fined without authority)
    d. They have ignored Judge Binkley's findings that the process for enforcement is legal proceedings in a court of law or a court of equity. (the 2nd time they've not followed the process)
    e. They have fined Plaintiff for the same violation (signs in his yard).
40. The Defendants have clearly acted negligently.

<u>Kathy Holbrook & Metropolitan Property Management LLC</u>

The question of whether a property manager or management company can be held liable for aiding an HOA in ignoring a court order or settlement agreement is addressed in Brock v. Cobblestone Park Dev. Grp. In this case, the property manager (Premier Property Management Group, LLC) was named as a defendant alongside the HOA and its board members. The homeowners alleged breach of contract and other claims against the manager for its role in the HOA's wrongful conduct, including ignoring settlement terms and failing to relinquish control as agreed. The court recognized that management companies can be held directly liable for their own breaches of contract and for actions taken in concert with the HOA that violate settlement agreements or court orders. Brock v. Cobblestone Park Dev. Grp. 2024, Ohio Ct. App., C. A. 2023CA0064-M.

41. Plaintiff contends that any and all of the claims against the HOA and the Board are equally applicable to Kathy Holbrook and Metropolitan Property Management LLC.
   a. They both aided in the fines levied.
   b. They have taken any and all actions to support the unauthorized actions of the HOA and Board.

Lack of Legality

Plaintiff contends that all of the actions taken by the Defendants that they believe justify their actions actually exceed any authority granted in the CCRs.

- The legality of any of the amendments to the Bylaws that they believe grants them authority is misguided. HOA governance typically involves several documents: the CCRs (sometimes called the Declaration), the bylaws, and any rules or regulations. The CCRs are recorded against the property and create binding obligations and rights for all owners. Bylaws, on the other hand, generally govern the internal management and procedures of the association. The CCRs are superior; bylaws cannot override or expand the substantive rights and obligations set forth in the CCRs. Plaintiff contends that the HOA and Board's amendments to the Bylaws that purportedly grants them power to "adopt and publish the rules, regulations and standards governing individual "lot(s)" provided bia the "Rules and Regulations Committee (ART IX)." (See Exhibit 8, page 2) is in direct contradiction to the CCRs and thus invalid. The CCRs grant the HOA and Board power to manage the Common Areas and architectural control over the individual lots. (See Exhibit 9) That is all. The CCRs grants them power to collect assessment to provide maintenance to the Common Areas. This is reiterated in the Articles of Incorporation. (See Exhibit 11, page 1) In addition, if you read the original Bylaws it also outlines the powers specifically Article VII, section 1(a). (See Exhibit 10, page 4).
- The legality of any fines assessed by the Defendants is illegal and invalid. One needs to look no further than Judge Binkley's Final Order to understand this. (See Exhibit 2, page 7). But one can also read the CCRs for themselves and find that there's no provision for the power to fine for violations. (See Exhibit 9 under enforcement)

Musical Chairs of the Different Board Members

Exhibit 23 demonstrates that essentially the same people have been on the Board for awhile, they simply change positions or roles. Take note that James Summar was the President that signed the Settlement Agreement. Plaintiff contends that the Board misrepresented the fact that it wasn't aware of the status of the case (20C-1835 and the Settlement Agreement). (See Exhibit 19)

Wherefore, Plaintiff seeks damages from each Defendant as follows:

- Under Fair Housing Act:
    - $25,000,000 Punitive Damages

- Injunctive Relief regarding the fines and violations of the CCRs.
- Under Selective Enforcement:
  - Injunctive Relief regarding enforcement of the already declared non-violation for signs.
  - $500,000 Punitive Damages
- Under Breach of Fiduciary Duty:
  - Injunctive Relief
  - $50,000,000 Punitive Damages
- Under Ultra Vires Acts:
  - Injunctive Relief
- Under Breach of Settlement Agreement:
  - Injunctive Relief
- Under Negligence:
  - $150,000 General Damages
  - $10,000,000 Punitive Damages

No Cap On Punitive Damages

In December 2018, the U.S. Court of Appeals for the Sixth Circuit struck down Tennessee's damage caps on punitive damage awards. The assertion that federal courts in Tennessee do not apply Tennessee's damage caps to punitive damages is supported by the case of *Lindenberg v. Jackson Nat'l Life Ins. Co.*. In this case, the United States Court of Appeals for the Sixth Circuit held that Tennessee's statutory cap on punitive damages was unconstitutional as it violated the right to trial by jury under the Tennessee Constitution. Thus, Plaintiff's awards are consistent with the Federal Court's awards granted under Tennessee Law. Plaintiff requests that Defendants be held jointly and severally.

Applicability To Board Members As Individuals (personal liability)

When board members act outside the scope of their authority, in bad faith, or in knowing violation of a court order or settlement, courts have recognized the possibility of personal liability. In Houden v. Todd, the court addressed whether a board member could be insulated from liability by virtue of their position. The court found that the liability waiver in the HOA's covenants did not protect the board member from liability for actions taken in an individual capacity or outside the scope of board duties. Houden v. Todd 2014, Mont., 324 P.3d 1157.

In Brock v. Cobblestone Park Dev. Grp., homeowners brought claims for breach of fiduciary duty and negligence against individual board members for wrongful acts, including failure to comply with settlement agreements. The case demonstrates that board members can be named individually in litigation for breaches of duty or for actions contrary to settlement terms. Brock v. Cobblestone Park Dev. Grp. 2024, Ohio Ct. App., C. A. 2023CA0064-M.

Courts have recognized that while board members are generally protected when acting within their authority and in good faith, this protection does not extend to actions that are ultra vires (beyond their authority), in bad faith, or in knowing violation of legal obligations. Houden v. Todd 2014, Mont., 324 P.3d 1157; Brock v. Cobblestone Park Dev. Grp. 2024, Ohio Ct. App., C. A. 2023CA0064-M.

Declaratory Judgment

Plaintiff also seeks for the Court to Declare (declaratory judgment):

- The HOA doesn't have the power to fine.
- The Amendments to the Bylaws have no legal effect (null and void) to justify any fines and are contrary to the CCRs.
- The Management Contract with Metropolitan Property Management LLC null and void.
- Any and all actions taken by the HOA and the Board outside the scope of the CCRs are null and void.

Additional Court Action Sought

Plaintiff seeks the Court also order the following:

- New elections for the Board and the immediate removal of the present Board.
- A new competent attorney to replace current attorney Scott Weiss on the grounds that he has been complicit in the HOA and Board's behavior that exceeds the authority granted under the CCRs.
- Appoint a receiver to manage the HOA while it is in transition to new leadership.
- Suspend any right of the HOA and Board to amend the CCRs, Bylaws or any other legal document for a period of no less than 10 years. (the current Board has not shown where the original intent and purpose of the HOA/Board needed to be changed, they just needed to comply with the CCRs)(in fact the Board has never sought to amend the CCRs)
- Enjoin the HOA and Board from taking any further action toward Plaintiff for any claims already settled for under the agreement and/or covered by Judge Binkley's Final Order.
- Order strict immediate compliance with the Settlement Agreement and Final Order.
- Any and all remedies the Court determines is appropriate.

Plaintiff contends that the presence of a clear court order and a settlement agreement strengthens the argument for personal liability when they are knowingly disregarded. The current roster of Board Members, Plaintiff argues they were in office when the case closed. In fact, James Summar was the President, and it is his signature on the Settlement Agreement. (See Exhibit 25) It isn't too far of a stretch to say that the individual board members had knowledge of everything and acted anyway at their own peril.

Respectfully Submitted

Monsieur Shawnellias Burgess
Pro Se
3040 Cody Hill Road
Nashville, TN 37211
615-579-5752

FILED

2025 AUG 15 PM 2:34

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

US District Court

Office of the Clerk Only

719 Church St.

Suite 1300

Nashville, TN 37203

(P)615-736-5498

Must Be Signed by A Clerk