FILED

**IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE**

2025 AUG 15 PM 2:33
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

2020 AUG 18 PM 12:35
RICHARD R. ROOKER, CLERK
D.C.

| | | |
|---|---|---|
| **MONSIEUR SHAWNELLIAS BURGESS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 20GC9604** |
| **BRADFORD HILLS HOA c/o TIMMONS PROPERTIES INC. and LYNN BURKA,** | ) | |
| **Defendant.** | ) | |

---

**ORDER**

---

This cause came to be heard on August 18, 2020 on Defendant Bradford Hills HOA's ("HOA") "Motion to Remove to Circuit Court." The Court finds that the motion is well taken and shall be granted. The HOA's defense will be substantial, complex, and expensive to present, and requires compulsory counterclaims for injunctive and declaratory relief. The HOA has posted a sufficient cost bond for removal to the Circuit Court. Therefore, this action is removed to the Circuit Court for Davidson County, Tennessee. The Clerk of the Davidson County General Sessions Court is directed to promptly transfer this action to the Clerk of the Davidson County Circuit Court for adjudication. DEFT. TO PAY COST.

It is so ORDERED this the 18 day of Aug, 2020.

Judge XII

{00251262}



Exhibit 1

**APPROVED FOR ENTRY:**

BENJAMIN E. GOLDAMMER (#26328)
CHRISTOPHER B. FOWLER (#30765)
Kay Griffin, PLLC
222 Second Ave. N., Suite 340-M
Nashville, TN 37201
(615) 742-4800
bg@kaygriffin.com
cfowler@kaygriffin.com
*Attorneys for Defendant Bradford Hills, HOA*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing Motion was served via U.S. Mail upon:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211

Lynn Burka
Timmons Properties, Inc.
2200 21st Ave. South
Nashville, TN 37212

on this the 10th day of August, 2020.

Christopher B. Fowler

{00251262}

EFILED 08/20/20 10:52 AM CASE NO. 20C1835 Richard R. Rooker, Clerk

# STATE OF TENNESSEE, COUNTY OF DAVIDSON

FILED 2020 JUL 13 AM 9:53 RICHARD R. ROOKER, CLERK D.C.

RECEIVED BY D.C.S.O. 2020 JUL 14 PM 8:19

To Any Lawful Officer to Execute and Return:

Summon Bradford Hills HOA and Lynn Burka, Manager of Timmons Properties Inc.

to appear before the Metropolitan General Sessions Court of Davidson County, Tennessee, to be held in Courtroom 1A, Justice A. A. Birch Building, 408 Second Avenue North, Nashville, Tennessee, on Aug 18, 20 20 at 8:45 A.M., then and there to answer in a civil action brought by the Plaintiff(s) for:

Breach of Contract/CC&R and Fines Levied in violation of CC&R and other Rules of HOA Plaintiff seeks injunction from fines and court costs. Defendant has assessed $100 in fines on July 7th. Plaintiff hasn't violated any Rules, Laws or CC&R. Plaintiff is in compliance with Federal, State and City Laws and ordinances.

under $ 1,000 Dollars

**JUDGMENT**

Judgment for ______

against ______ for

$ ______ Dollars and cost of suit for

which execution may issue. Entered: ______, 20 ______

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

Judge, Division ______, Metropolitan General Sessions Court

---

PRO SE

COURTROOM 1A

No. 20GC9604

☐ Alias ☐ Amended ☐ Counter-Claim

14/ 14

Monsieur Shawnellias Burgess
Plaintiff(s)
3040 Cody Hill Road, Nashville, TN 37211
Address
615-579-5752
Telephone

vs.

Bradford Hills HOA c/o Timmons Properties Inc
Defendant
2200 21st Ave. South, Nashville, TN 37212
Address

Lynn Burka, Manager Timmons Properties Inc.
Defendant
2200 21st Ave. South, Nashville, TN 37212
Address

## CIVIL WARRANT

Metropolitan General Sessions Court

Issued 07/13, 20 20

RICHARD R. ROOKER, Clerk

By: ______ Deputy Clerk

Do not set on Friday 8.18

Set for 8:45 A.M. on Aug 18, 20 20

Courtroom 1A
Justice A. A. Birch Building
408 Second Avenue North
P.O. Box 196304
Nashville, TN 37219-6304
(615) 862-5195

Service by: ☐ Private Process ☐ D.C. Sheriff ☐ O.C. Sheriff ☐ Other

Reset for: ______

Came to hand same day issued and executed as commanded on:
Served Timmons Properties Whom Also Accepted service For Lynn Burka Deliver Copy to listed Address

Served: Aug 3 2020
Clerk Deputy Cecarito Robinson
Davidson County Sheriff's Office
Sheriff/Process Server

Pro Se P.O. Box 196383 Nashville TN 37219-6383
Attorney for Plaintiff

615-579-5752
Telephone

BENJAMIN GOLDAMMER
Attorney for Defendant

8-4-20 @ 7:16 VM CHRISTOPHER

**NOTICE**

**TO THE DEFENDANT(S):**

Failure to appear and answer this Summons will result in judgment by default being rendered against you for the relief requested. Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. This list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these items include items of necessary wearing apparel (clothing) for yourself and your family and trunks and other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to execute it, you may wish to seek the counsel of a lawyer.

**AFFIDAVIT**

To the best of my information and belief, after investigation of Defendant's employment, I hereby make affidavit that the Defendant is/is not a member of a military service.

______________________________
Plaintiff or Attorney for Plaintiff

______________________________
Notary Public

My Commission Expires ______________

**ORDER**

Entered:__________________, 20____

______________________________
Judge, Division _____, Metropolitan General Sessions Court

**ORDER**

Entered:__________________, 20____

______________________________
Judge, Division _____, Metropolitan General Sessions Court

**ORDER**

Entered:__________________, 20____

______________________________
Judge, Division _____, Metropolitan General Sessions Court

FILED
2020 AUG -4 AM 8: 38
RICHARD R. ROOKER, CLERK
D.C.

IN THE GENERAL SESSIONS COURT FOR
DAVIDSON COUNTY, TENNESSEE AT NASHVILLE
(CIVIL DIVISION)

MONSIEUR SHAWNELLIAS BURGESS,

Plaintiff,

v.

BRADFORD HILLS HOA, and
LYNN BURKA, MANAGER OF TIMMONS
PROPERTIES, INC.

Defendant,

Docket No. 20GC9604

**NOTICE OF APPEARANCE**

Ortale Kelley Law Firm and Scott D. Weiss hereby give notice to this Honorable Court of appearance as counsel for the Defendant in this matter. It is respectfully requested that all pleadings, notices or papers hereinafter filed with, or issued by the Clerk, include the undersigned in the certificate of service.

Respectfully Submitted,

Ortale Kelley Law Firm

Scott D. Weiss, Attorney #20552
Dayne P. Geyer # 034249
330 Commerce Street, Suite 110
Nashville, TN 37201
(615) 256-9999
sweiss@ortalekelley.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been served via electronic mail (email), on the following:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211
shawnellias@yahoo.com

This 4th day of August, 2020.

Scott D. Weiss

8.18.20
A

20GC9604 NTA

IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

FILED

2020 AUG -6 PM 3:46

RICHARD R. ROOKER, CLERK

D.C.

| | | |
|---|---|---|
| **MONSIEUR SHAWNELLIAS BURGESS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 20GC9604** |
| **BRADFORD HILLS HOA,** | ) | |
| **Defendant.** | ) | |

**NOTICE OF APPEARANCE**

Benjamin E. Goldammer, Christopher B. Fowler and the law firm of Kay Griffin, PLLC hereby give notice that they will represent the Defendant Bradford Hills HOA in this matter.

Respectfully submitted,

KAY GRIFFIN, PLLC

BENJAMIN E. GOLDAMMER (#026328)
CHRISTOPHER B. FOWLER (#030765)
222 Second Avenue North
Suite 340M
Nashville, Tennessee 37201
615-742-4800
bg@kaygriffin.com
cfowler@kaygriffin.com

*Attorneys for Defendant*

{00250025}

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing notice has been served via U.S. mail upon:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211

on this the 6th day of August, 2020.

______________________

08.18.20
A

20GC9604

IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

FILED
2020 AUG 12 PM 4:13
RICHARD R. ROOKER, CLERK
D.C.

| | | |
|---|---|---|
| **MONSIEUR SHAWNELLIAS BURGESS,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 20GC9604** |
| **BRADFORD HILLS HOA c/o TIMMONS PROPERTIES INC. and LYNN BURKA,** | ) | |
| **Defendants.** | ) | |

---

**DEFENDANT BRADFORD HILLS HOA'S**
**MOTION TO REMOVE TO CIRCUIT COURT**

---

Pursuant to Tenn. Code Ann. § 16-15-732, Defendant Bradford Hills HOA ("HOA") respectfully moves this Court for the entry of an order removing this action from General Sessions Court to the Circuit Court for Davidson County, Tennessee.

## I. OVERVIEW

The HOA sent numerous notices to Plaintiff Monsieur Shawnellias Burgess ("Mr. Burgess") requesting that he remove the multiple signs and high-pitched sound devices in his yard as both are violations of various HOA rules and regulations. Instead of complying with the HOA demands, the signs and speakers remain, and Mr. Burgess filed this suit against the HOA and Lynn Burka - an individual employee of HOA's property manager, Timmons Property, Inc. The HOA will file a compulsory countercomplaint against Mr. Burgess seeking damages, an injunction, and declaratory judgment to determine the rights, status, and legal relations of the parties. Therefore, in order to avoid duplicative and unnecessary litigation, this action must be removed to the Circuit Court of Davidson County - a court of record – as required by Tenn. Code Ann. § 29-14-102.

{00251243}

## II. LEGAL BASIS FOR REMOVAL

As set forth in the affidavit attached as **Exhibit A**, the HOA has credible defenses to this suit of such a complex and expensive nature (and amount) that the interests of justice require that the HOA not be required to present the defense at the general sessions court level. In addition, the HOA has compulsory counterclaims which include causes of action for (1) damages, (2) injunctive relief, and (3) declaratory relief in order to determine the rights, status, and legal relations of the parties. Pursuant to Tennessee's Declaratory Judgment Act and, only courts of record are vested with jurisdiction to grant declaratory relief as "[c]ourts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102(a). Therefore, removal of this case to the Davidson County Circuit Court will preserve judicial resources as all claims will be adjudicated within a single trial court.

The cost bond, as required by Tenn. Code Ann. § 16-15-732(b), is attached as **Exhibit B**. A proposed order granting the removal is attached as **Exhibit C**.

## III. CONCLUSION

For all of the reasons stated herein, this matter should be removed to the Circuit Court of Davidson County.

Respectfully submitted,

BENJAMIN E. GOLDAMMER (#26328)
CHRISTOPHER B. FOWLER (#30765)
Kay Griffin, PLLC
222 Second Ave. N., Suite 340-M
Nashville, TN 37201
(615) 742-4800
bg@kaygriffin.com
cfowler@kaygriffin.com
*Attorneys for Defendant Bradford Hills, HOA*

{00251243}

## NOTICE OF HEARING

**THIS MOTION IS SET FOR A HEARING AT 9:00 A.M. ON THE 18TH DAY OF AUGUST, 2020. IF NO RESPONSE IS TIMELY FILED AND PERSONALLY SERVED, THE MOTION SHALL BE GRANTED AND COUNSEL OR PRO SE LITIGANT NEED NOT APPEAR IN COURT AT THE TIME AND DATE SCHEDULED FOR THE HEARING.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Motion was served via U.S. Mail upon:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211

Lynn Burka
Timmons Properties, Inc.
2200 21st Ave. South
Nashville, TN 37212

on this the 12th day of August, 2020.

Christopher B. Fowler

{00251243}

IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

EXHIBIT A

| | | |
|---|---|---|
| MONSIEUR SHAWNELLIAS BURGESS,<br><br>Plaintiff,<br><br>v.<br><br>BRADFORD HILLS HOA c/o TIMMONS PROPERTIES INC. and LYNN BURKA,<br><br>Defendants. | ) | Case No. 20GC9604 |

## AFFIDAVIT OF CHRISTOPHER B. FOWLER

I, CHRISTOPHER B. FOWLER, having been first duly sworn, hereby deposes and state as follows:

1. I am an attorney licensed to practice law in the State of Tennessee.
2. I am competent to provide this testimony.
3. I am counsel of record for Defendant Bradford Hills HOA ("HOA") in this action.
4. I am providing this affidavit in support of HOA's Motion for Removal to Circuit Court, as required by Tenn. Code Ann. § 16-15-732.
5. HOA has a substantial defense to this action, which will be of such a complex and expensive nature (and amount) that the interests of justice require that the HOA not be required to present the defense at the general sessions court level. The grounds of the defense and the reasons why I believe it to be sufficiently substantial, complex, and expensive to merit the removal of the case are set forth below:

{00251251}

6. In addition, HOA has compulsory counterclaims which include causes of action for (1) an injunction, and (2) declaratory judgment to determine the rights, status, and legal relations of the parties.

7. Judicial economy and resources of the parties would be most efficiently spent having all of these matters heard before the Circuit Court of Davidson County.

FURTHER THE DEPONENT SAITH NAUGHT.

CHRISTOPHER B. FOWLER

{00251251}

**STATE OF TENNESSEE )**
**COUNTY OF Davidson )**

**Personally appeared before me, the undersigned, a Notary Public, in and for said county and state, the within named Christopher B. Fowler with whom I am personally acquainted, who, after being duly sworn, made oath that he executed the foregoing for the purposes therein contained.**

**WITNESS my hand and official seal this 12 day of August, 2020.**

EWilliams
**NOTARY PUBLIC**
Expired: 05.09.2023

ELEANOR VERA WILLIAMS STATE OF TENNESSEE NOTARY PUBLIC DAVIDSON COUNTY MY COMMISSION EXPIRES 5-9-2023

{00251251}

IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

EXHIBIT B

| | | |
|---|---|---|
| **MONSIEUR SHAWNELLIAS BURGESS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 20GC9604** |
| **BRADFORD HILLS HOA c/o TIMMONS PROPERTIES INC. and LYNN BURKA,** | ) | |
| **Defendants.** | ) | |

**COST BOND**

As required by Tenn. Code Ann. § 16-15-732(b), Defendant, Bradford Hills HOA, as principal, and Kay Griffin, PLLC, as surety, execute this cost bond as security to defray all costs that have accrued prior to Bradford Hill HOA's Motion to Remove to the Circuit Court of Davidson County. The undersigned principal and surety bind themselves to such obligations to the full extent that Tenn. Code Ann. § 16-15-732(b) requires.

Bradford Hills HOA

By: [signature]

Its: Attorney

Date: 8-12-20

Kay Griffin, PLLC

By: [signature]

Its: Attorney

Date: 8-12-20

{00251255}

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing Motion was served via U.S. Mail upon:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211

Lynn Burka
Timmons Properties, Inc.
2200 21st Ave. South
Nashville, TN 37212

on this the 12 day of August, 2020.

Christopher B. Fowler

{00251255}

IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

EXHIBIT C

| | | |
|---|---|---|
| **MONSIEUR SHAWNELLIAS BURGESS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 20GC9604** |
| **BRADFORD HILLS HOA c/o TIMMONS PROPERTIES INC. and LYNN BURKA,** | ) | |
| **Defendant.** | ) | |

## [PROPOSED] ORDER

This cause came to be heard on August 18, 2020 on Defendant Bradford Hills HOA's ("HOA") "Motion to Remove to Circuit Court." The Court finds that the motion is well taken and shall be granted. The HOA's defense will be substantial, complex, and expensive to present, and requires compulsory counterclaims for injunctive and declaratory relief. The HOA has posted a sufficient cost bond for removal to the Circuit Court. Therefore, this action is removed to the Circuit Court for Davidson County, Tennessee. The Clerk of the Davidson County General Sessions Court is directed to promptly transfer this action to the Clerk of the Davidson County Circuit Court for adjudication.

It is so ORDERED this the ___ day of __________, 2020.

____________________________
Judge

{00251262}

**APPROVED FOR ENTRY:**

BENJAMIN E. GOLDAMMER (#26328)
CHRISTOPHER B. FOWLER (#30765)
Kay Griffin, PLLC
222 Second Ave. N., Suite 340-M
Nashville, TN 37201
(615) 742-4800
bg@kaygriffin.com
cfowler@kaygriffin.com
*Attorneys for Defendant Bradford Hills, HOA*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing Motion was served via U.S. Mail upon:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211

Lynn Burka
Timmons Properties, Inc.
2200 21st Ave. South
Nashville, TN 37212

on this the 12Th day of August, 2020.

Christopher B. Fowler

{00251262}

IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

FILED
AUG 17 2020
RICHARD R. ROOKER, Clerk
By ________ Deputy

MONSIEUR SHAWNELLIAS BURGESS

PLAINTIFF

V. CASE NO. 20GC9604

BRADFORD HILLS HOA C/O

TIMMONS PROPERTIES INC. AND

LYNN BURKA

DEFENDANTS

PLAINTIFF'S OPPOSITION TO MOTION TO REMOVE TO CIRCUIT COURT

Comes now the Plaintiff acting on his own behalf in opposition to Defendant's Motion to Remove to Circuit Court on the following grounds:

1. This case is a simple contract dispute. The Contract clearly spells out what can and can not be done and this Court is more than competent to resolve this dispute.
2. In the interest of time and money, the Plaintiff chose this forum to resolve this matter expeditiously as possible. The Contract speaks for itself and this Court is quite competent to resolve the issues of this case.
3. Plaintiff at the hearing on this Motion can introduce clauses to the Court that dispels the Defendants notions that they have any substantial defenses or counterclaims in this Case. Again, the Contract speaks for itself.

4. The Defendants have a right to appeal to Circuit Court and the Court hears the case De Novo and thus any counterclaims will still be available to the Defendants. Since all parties are present at this hearing the case should be heard.

Wherefore, this is a simple straight forward case which is the purpose of the General Sessions Court and pursuant to TCA 16-15-732 (c)2, the Plaintiff moves this court to dismiss the Motion to Remove to Circuit Court and try this case.

Respectfully Submitted

Monsieur Shawnellias Burgess

Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND EXACT COPY OF THE FORGOING PLAINTIFF'S OPPOSITION TO MOTION TO REMOVE TO CIRCUIT COURT WAS SERVED VIA U.S. MAIL UPON:

Lynn Burka
Timmons Properties, Inc.
2200 21st Ave. South
Nashville, TN 37212

Christopher Fowler
Kay Griffin, PLLC
222 Second Ave. N.
Suite 340-M
Nashville, TN 37201

On this the 14th day of August, 2020.

Monsieur Shawnellias Burgess

IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| MONSIEUR SHAWNELLIAS BURGESS, | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 20C1835 |
| BRADFORD HILLS HOA c/o TIMMONS PROPERTIES INC. LYNN BURKA and SCOTT WEISS, | ) | |
| Defendants. | ) | |

**COURT'S FINAL ORDER ON PLAINTIFF'S REQUEST FOR A DECLARATORY JUDGMENT AS INTERPRETED BY THE COURT OF APPEALS' OPINION**

The Court of Appeals' Opinion in the case of *Burgess v. Bradford Hills HOA, et al*, 2023 WL 142392 at *9 states the following:

> A thorough review of the amended complaint shows that the substance of Mr. Burgess's claim against the HOA and Ms. Burka is that he should not be fined for the various conditions on his property because he has not violated the CCRs. **In other words, the amended complaint sought a declaratory judgment <u>construing</u> the CCRs and 'declar[ing] the rights, status, and other legal relations' of the parties under the CCRs to determine whether Mr. Burgess violated the CCRs. Tenn. Code Ann. § 29-14-102; *see also Royalton Woods*, 2019 WL 366525, at *5. ('[L]and owners may voluntarily enter into agreements with other land owners to restrict the use of their property in a way that is mutually beneficial. Such agreements are commonly referred to as restrictive covenants and they are, in essence, contractual obligations between property owners . . .')**



Exhibit 2

> **(citations omitted).** . . . We, therefore, conclude that the circuit court erred in granting the HOA's and Ms. Burka's motion to dismiss as to Mr. Burgess's claim for a declaratory judgment. That portion of the court's order granting the motion to dismiss is vacated and remanded for **further proceedings** to determine whether conditions on Mr. Burgess's property violated the CCRs." (emphasis added)

In determining the issues on remand to the trial court, this Court must first determine what **"further proceedings"** must occur in order to follow the mandate from the Court of Appeals. Secondly, the Court must determine what "further proceedings" must occur in order to **"construe"** the Bradford Hills' CCRs.

This Court finds that in order to determine whether the "conditions" on the Plaintiff's property violate the CCRs of the Bradford Hills Homeowners' Association, Inc., which were filed in the office of the Davidson County Register of Deeds on March 21, 1990, this Court must make an initial analysis of whether or not the language of the CCRs allows for fines to be assessed against homeowners for violations of the "signs restrictions", which restrictions are stated only in the "notice of fine policy effective August 1, 2009", and which restrictions are nowhere stated in the CCRs. In addition, the Court must determine whether or not the CCRs allow for fines to be assessed against homeowners for allowing "noxious or offensive activity" on any homeowners' lot which may become an "annoyance or nuisance to the neighborhood". Article VI of the CCRs entitled Additional Restrictions at section 3 states the following: **"No noxious or offensive activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."** (emphasis added) Article VII of the CCRs entitled General Provisions at section 1 entitled **Enforcement** states the following: **"The**

**Association, or any Owner, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration."** (emphasis added)

The case of *Pandharipande, M.D. v. FSD Corporation* is a recent Tennessee Supreme Court Opinion, 2023 WL 6819018 at *6, and provides authority and guidance to the trial courts in interpreting CCRs, which this Court will follow in its analyses.

> First, we keep in mind that '[a] property owner's right to own, use, and enjoy private property is a fundamental right'. *Phillips,* 624 S.W.3d at 474 [Tenn.2021], (quoting *Hughes*, 387 S.W.3d at 474 [Tenn. 2012]. Second, because restrictive covenants are 'in derogation of the right of free use and enjoyment of property,' they are 'strictly construed' and should not be extended 'to any activity not clearly and expressly prohibited by [their] plain terms'. *Williams v. Fox*, 219 S.W.3d, 319, 324 (Tenn. 2007); *see also, e.g.*, *Phillips,* 624 S.W.3d at 475; *Hughes,* 387 S.W.3d at 481 . . . 'When the terms of a covenant may be construed in more than one way, courts must resolve any ambiguity against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property'. *Hughes*, 387 S.W.3d at 481 (quoting *Williams,* 219 S.W.3d at 324). Third, because a covenant is a contract, see *Hughes*, 387 S.W.3d at 480-81, we interpret it by 'look[ing] to the plain meaning of the words in the document,' *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *see also Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn.2008) (instructing that a 'contract is interpreted according to its plain terms as written'). . . . Fourth,

we may conclude that the language in a covenant is ambiguous if it is 'susceptible of more than one reasonable interpretation.' *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001). **But we must employ all traditional tools of interpretation before reaching that conclusion.** ***Cf. State v. Deberry*****, 651 S.W.3d 918, 930 (Tenn. 2022). ('A court should deem statutory language ambiguous only after employing all of the traditional tools of statutory construction, including consulting dictionary definitions, examining statutory structure and context, and applying well-established canons of statutory construction.')** (emphasis added)

As general rules, the Plaintiff property owner in this case has the fundamental right to use his property as he sees fit; however, since there are restrictive covenants in place for the Bradford Hills HOA, those CCRs must be strictly construed by the Court.

Since CCRs are contracts, they must be interpreted by looking at the plain meaning of the words as written. In following the Court of Appeals' Mandate on remand to this Court, the Court looks to Webster's New World Dictionary of the American Language Second College Edition 1970 **for the definitions of "construe" and "proceeding"**. The 1970 dictionary definition of **construe** is: "**to analyze**; to explain or deduce the meaning of; **interpret deduce**". (emphasis added) The 1970 dictionary definition of **proceeding** is: "the carrying on of an action or course of action; legal action". Black's Law Dictionary's (11th ed. 2019) definition of **proceeding** is: "the regular and orderly progression of a lawsuit". The Court, therefore, interprets the mandate as requiring this Court **to analyze and interpret (construe)** the Bradford Hills' Homeowners' Association's CCRs through this court proceeding.

In addition, the Court has consulted Webster's New World Dictionary of the American Language Second College Edition 1970 for the definitions of **"annoyance", "at law"** and **"in equity"**, which terms as previously stated are contained in the Bradford Hill's HOA's CCRs. The 1970 edition definition of "annoyance" is: "an annoying or being annoyed; a thing or person that annoys"; however, in consulting the 1970 edition, there is no definition for "at law" or "in equity". The Black's Law Dictionary's (11th ed. 2019) definition for **annoyance**; however, states **"See nuisance"**. Black's Law Dictionary's (11th ed. 2019) definition of **"nuisance"** is: "a condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property – formerly also termed annoyance." It is therefore clear, and the Court finds that Black's Law Dictionary (11th ed. 2019) treats annoyance and nuisance as synonyms. In discussing the definition of nuisance, Black's Law Dictionary (11th ed. 2019) states among other things the following: "It is also true that **one of the great difficulties in defining a nuisance** technically is to describe the degree of annoyance necessary to cause the actionable injury . . . **In torts, the word 'nuisance' has had an extremely elastic meaning.**", and this Court finds that these discussions of the word "nuisance" also apply to the word "annoyance". (emphasis added)

The Court will now analyze and interpret (construe) the meaning of the terms of **"at law"** and **"in equity"**, which words are contained in Article VII in section 1 entitled **Enforcement** of the Bradford Hill's HOA's CCRs. Black's Law Dictionary's (11th ed. 2019) definition of **"at law"** is: "according to law; by, for, or in law". Black's Law Dictionary's (11th ed. 2019) definition of **"in equity"** is: "in a chancery court rather than a court of law; before a court exercising equitable jurisdiction." Even though this Court does not find that the 2019 dictionary definition of "at law"

is fully explained, in reviewing the definition of "in equity", the Court finds that "at law" means in a court of law rather than in a chancery court or a court of equity.

Since CCRs are ". . . property interests that run with the land . . . they should be viewed as contracts (internal citations omitted), and they should be construed using the rules of construction generally applicable to the construction of other contracts. (internal citations omitted) The courts enforce restrictions [CCRs] according to the clearly expressed intentions of the parties manifested in the restrictions themselves. (internal citations omitted) We give the terms used in restrictions their fair and reasonable meaning . . ., and we decline to extend them beyond their clearly expressed scope . . . **When the restriction's terms are capable of more than one construction, we should adopt the construction that advances the unrestricted use of the property . . . We should also resolve ambiguities in the restrictions against the party who drafted them . . . and finally we should resolve all doubts concerning the covenant's applicability against applying the covenant**. See *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn.Ct.App.1990)." *Maples Homeowners Association, Inc. v. T&R Nashville Limited Partnership*, 993 S.W.2d 36, 39 (Tenn.Ct.App.1998). (emphasis added)

In the case of *Four Eights, LLC v. Salem,* 194 S.W.3d 484, 487 (Tenn.Ct.App.2005), the Tennessee Court of Appeals states the following: **"It is a fundamental rule of law that an alleged contract which is so vague, indefinite and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable."** (emphasis added)

The Court will now turn to "traditional tools of statutory construction" and analyze them in the context of the Bradford Hill's HOA's CCRs. The rules of construction generally applicable to the construction of other contracts are very similar to the rules of statutory construction. The Tennessee Supreme Court case of *Foster v. Chiles*, 467 S.W.3d 911, 914 (Tenn.2015), states the

following: "If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without a forced interpretation. (internal citations omitted)"

As stated in the recent Supreme Court case of *Pandharipande vs. FSD Corporation* at *6, all of the above stated analyses are required before this Court may reach a conclusion as to whether or not any portions of the Bradford Hill's HOA's CCRs are ambiguous, and the Court finds the following:

1. Since restrictive covenants are in derogation of a property owner's right of free use of his property, CCRs must be strictly construed; therefore, the Court finds that nowhere in the Bradford Hills' HOA's CCRs is there an enforcement remedy of fines for violations of the CCRs.
2. The Court finds Article VII, section 1, entitled **Enforcement**, clearly states the Homeowners Association or any owner of property in the Homeowners Association are authorized to enforce the CCRS, but **that enforcement must be initiated by a proceeding in a court of law or in a court of equity, neither of which was done in this case.**
3. Article VI, section 3, of the CCRs provides there shall be no noxious or offensive activity which **may become an annoyance or nuisance to the neighborhood.** The Court finds that the terms **"may become an annoyance"** or "**nuisance" are too vague and ambiguous and are, therefore, unenforceable.** As a result, since the ambiguities must be resolved against the party seeking to enforce the restrictions, those ambiguities are resolved against the Defendant Bradford Hill's HOA.

Chapter 14 of Tennessee Code Annotated is entitled Declaratory Judgments. T.C.A. Section 29-14-102 entitled Powers and Duties states in part the following:

"(a) Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.;

(c) The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree."

Based upon the above analyses and reasonings, this Court finds and declares that the Plaintiff has not violated the Bradford Hill's HOA's CCRs.

Since the Defendant Bradford Hills Homeowners' Association, Inc. is not a "natural person," the corporate entity must speak and act through its agents who are natural persons. "A corporation is an artificial entity, which 'cannot act or speak except through natural persons duly authorized.'" *Old Hickory Engineering and Mach. Co. v. Henry*, 937 S.W.2d 782, 785 (Tenn. 1996). The named Defendant Lynn Burka in this action was the agent acting and speaking for the corporate entity Bradford Hills HOA when fines were assessed against the Plaintiff. Also, since the mandate from the Court of Appeals to this Court involves only this Court's review and **construction** of the CCRs of the Defendant Bradford Hills HOA in order to **declare** "the rights, status, and other legal relations" (Tenn. Code Ann. § 24-14-102) of the parties under the CCRs, and since the court has entered this Order, consistent with the Court of Appeals' Mandate, the named Defendant Lynn Burka is no longer necessary to this litigation. Therefore, Lynn Burka is dismissed from this lawsuit.

To the extent that the Plaintiff has paid any fines to the Bradford Hills HOA, those fines must accordingly be reimbursed to him.

Court costs are taxed to the Defendant Bradford Hills HOA.

IT IS SO ORDERED.

JUDGE JOE P. BINKLEY, JR.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Order has been mailed and emailed where indicated to:

Monsieur Shawnellias Burgess
3040 Cody Hill Road
Nashville, TN 37211
shawnellias@yahoo.com
*Pro se Plaintiff*

Scott Weiss, Esq.
Haley Vos, Esq.
Ortale Kelley Law Firm
330 Commerce Street, Suite 110
Nashville, TN 37201
hvos@ortalekelley.com
*Attorneys for Defendant Scott Weiss*

Brad Craig, Esq.
Dale Bay, Esq.
424 Church Street, Suite 250
P.O. Box 198615
Nashville, TN 37219
bcraig@lewisthomason.com
*Attorneys for Defendants Bradford Hills Homeowners Association and Lynn Burka*

Benjamin E. Goldammer, Esq.
Christopher B. Fowler, Esq.
Kay Griffin, PLLC
222 Second Ave. N., Suite 340-M
Nashville, TN 37201
cfowler@kaygriffin.com
*Attorneys for Defendant Bradford Hills, HOA and Lynn Burka*

Dayne Geyer
3420 Harborwood Circle
Nashville, TN 37214
dgeyer@bakerdonelson.com

Dayne P. Geyer, Esq.
BAKER DONELSON
1600 West End Avenue, Suite 2000
Nashville, TN 37203

this 15th day of December, 2023.

Deputy clerk

# Bradford Hills Homeowners Association Inc.

Homeowner Transaction History 1/1/1980 - 8/13/2025

**BH51592 - Monsieur Burgess - 3040 Cody Hill Rd**

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 12/31/2023 | Initial Balance | - | $0.00 | $0.00 |
| 1/1/2024 | Annual Dues | $138.00 | - | $138.00 |
| 1/16/2024 | Chk #1213184 | - | ($138.00) | $0.00 |
| 2/1/2024 | Apply Credit per PM & BOD | - | ($100.00) | ($100.00) |
| 1/1/2025 | Annual Dues | $145.00 | - | $45.00 |
| 1/22/2025 | Chk #3817649 | - | ($145.00) | ($100.00) |
| 2/7/2025 | Chk #3993318 | - | ($45.00) | ($145.00) |
| 4/28/2025 | Violation - Signs - Bradford Hills | $50.00 | - | ($95.00) |





Exhib. 13

# Metropolitan Properties Welcome Notice - Message from Bradford Hills Homeowners Association Inc. - [#XN2542142]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Wednesday, December 6, 2023 at 09:37 AM CST

METROPOLITAN PROPERTIES

Dear owner at Bradford Hills,

We are very excited to announce our new management partnership with your Board of Directors! Attached to this email, please find Metropolitan Properties' welcome notice. Within the notice, you will find contact information for your new Property Manager and their team. You will also find information about the new web portal and various dues paying options. If you would like to reach out to your new Property Manager directly, please email Kathy Holbrook at Kathy@mpmnashville.com. If you would like assistance getting logged into your new web portal, please feel free to call our office at (615) 915-3204 and speak with a member of our administrative team.

We look forward to meeting you!

Sincerely,

Metropolitan Properties Staff

Sincerely,

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

DOC Bradford Hills welcome notice FINAL.docx
451.8 KB

Exhibit 4

METROPOLITAN
PROPERTIES

4521 TROUSDALE DRIVE - NASHVILLE, TENNESSEE 37204

December 6, 2023

Dear Homeowner at Bradford Hills HOA,

We are privileged to announce that the Board of Directors of Bradford Hills HOA has engaged our company to assist them in the management of your Association. This partnership is effective January 1, 2024.

My name is Zach Johnson, President of Metropolitan Properties, LLC. My staff and I look forward to providing professional community management services to you with a key focus on excellent and responsive customer service.

MP's management system is unique to the industry, assigning multiple managers to each account to ensure we deliver multiple sets of eyes on your property and resident needs. Your management team is:

**Kathy Holbrook: Property Manager – Kathy@mpmnashville.com**
Vickie Campbell: Property Manager – Vickie@mpmnashville.com
Stephanie Gray: Senior Portfolio Manager – Stephanie@mpmnashville.com
Will Fuson: Vice President of Property Management- Will@mpmnashville.com

Although **Kathy** is your primary contact, you may contact any of these individuals for assistance via their email above or at the MPM office on **615-915-3204**. If you have an after-hours emergency, please contact our office number to be connected to the on-call manager. Our phone system will automatically re-route after hours.

Go to www.mpnashville615.com. On the top right-hand corner of our homepage, click on "Homeowner Portal". You will be directed to our Homeowner Portal access page. Near the bottom right-hand corner of this page, please click on "Request Homeowner Login" to set up your individual portal account. The quickest and easiest way to pay your assessments is via this portal. You can also make a maintenance request online and via this portal.

If we have an email address from the previous mgmt. company for you, you should look for a registration email for your portal from customerservice@mpmnashville.com to complete your portal registration.

(615) 915-3204 www.mpnashville615.com

- View your account balance and transaction history (***note that your balance from your prior management will be reflected on your account in late January 2024***)
- Make HOA dues payments
- View your association's governing documents
- Communicate with your Property Manager
- Submit maintenance requests
- View Monthly Financial Statements
- Obtain Insurance Documents

There are several ways to pay your dues:

- **ACH (Automatic Clearing House)**: You can sign up for this option through the Homeowner Portal.
- **Electronic Payments**: Should you wish to make electronic payments, Electronic Check or Credit Card, you will be able to do so through the Homeowner Portal.
- **Online bill pay through your bank**: Should you prefer to use your bank's bill pay feature for paying your dues, please use the following mailing address for your payment: **Bradford Hills HOA, PO Box 650322 Dallas, TX 75265-0322** and please **note your account number** found on the homeowner portal. Additionally, please schedule your payment to arrive at least 7-10 days prior to payment due date to ensure timely application of your payment to your account.
- **Pay with a check:** If you prefer to handwrite and mail a check each month, we will need to provide you with a coupon booklet. Please email billing@mpmnashville.com to request a booklet.

We know that transitions take some time to iron out the details of your account. We are available and eager to work with you to ensure your account information is accurate. We will plan to waive late fees for 60 days, or at the discretion of the Board, to account for the transition.

We appreciate the opportunity to work with you and your neighbors for many years to come.

Sincerely,

Zach Johnson
President
Metropolitan Properties

# Courtesy Notice Bradford Hills Homeowners Association Inc. - [#XN3707536]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Wednesday, March 26, 2025 at 09:09 PM CDT

Dear Monsieur Burgess,

Please see attachment for additional detail. During an inspection conducted on 03/25/2025 by the Bradford Hills Homeowners Association Inc. Covenants Enforcement Committee or management team, the following violation of the covenants was noted:

Signs - Bradford Hills-

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

Sincerely,

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

1st Violation.pdf
229.4 KB

Photo_03-25-25-04-51-17.jpeg
121.6 KB

Photo_03-25-25-04-50-53.jpeg
110.2 KB

Photo_03-25-25-04-50-42.jpeg
103.3 KB

Photo_03-25-25-04-50-22.jpeg
105.1 KB

Photo_03-25-25-04-50-04.jpeg
89.2 KB



Exhibit 5

# Re: Courtesy Notice Bradford Hills Homeowners Association Inc. - [#XN3707536]

From: Monsieur Shawnellias Burgess (shawnellias@yahoo.com)

To: customerservice@metropolitanpropertymgmt.com

Date: Thursday, March 27, 2025 at 11:13 AM CDT

I'm going to assume this was sent in error.

*Monsieur Shawnellias Burgess*
**Envoyé de mon iPhone Seize Pro**
**"2024 je suis prêt"**
**ΚΑΨ/ΦΝπ**

<1st Violation.pdf>
<Photo_03-25-25-04-51-17.jpeg>
<Photo_03-25-25-04-50-53.jpeg>
<Photo_03-25-25-04-50-42.jpeg>
<Photo_03-25-25-04-50-22.jpeg>
<Photo_03-25-25-04-50-04.jpeg>

On Mar 26, 2025, at 9:09 PM, Metropolitan Property Management <customerservice@metropolitanpropertymgmt.com> wrote:

Dear Monsieur Burgess,

Please see attachment for additional detail. During an inspection conducted on 03/25/2025 by the Bradford Hills Homeowners Association Inc. Covenants Enforcement Committee or management team, the following violation of the covenants was noted:

Signs - Bradford Hills-

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

Sincerely,

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

Exhibit 6

# New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Friday, March 28, 2025 at 02:45 PM CDT

Mr. Burgess

Unfortunately, it is not a mistake.

There was an approved amendment filed in November 2024 that appointed a Rules and Regulations committee. Please see page 2 of the amendment. I have also attached the rules and regulations and fine policy for your records, if you do not have them.

Sincerely,

Kathy Holbrook

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

Bradford Hills HOA - Amendment to ByLaws - Filed 11-12-2024.pdf
260.7 KB

Rules and Regulations 2025.pdf
3.4 MB

Bradford Hills Fine Policy 2025.pdf
2.1 MB



Exhibit 7

THIS INSTRUMENT PREPARED BY:
**SCOTT D. WEISS, ESQ., CCAL**
Kaman & Cusimano, LLC
9005 Overlook Boulevard
Brentwood, Tennessee 37027
**(Prepared from information provided by and at the direction of the Bradford Hills Homeowners Association, Inc.)**

Karen Johnson Davidson County
Batch# 1203369 BYLAWS
11/12/2024 03:15:30 PM 6 pgs
Fees: $32.00 Taxes: $0.00
20241112-0088004

# AMENDMENT TO THE BY-LAWS OF BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC.

**THIS AMENDMENT** to the By-Laws of Bradford Hills Homeowners' Association, Inc. ("Amendment") is made and entered into by the Members of the Bradford Hills Homeowners' Association, Inc. ("Bradford Hills" or "Association") in accordance with Article XIII, Section 1 of the By-Laws of Bradford Hills Homeowners' Association, Inc. ("By-Laws") of record in Book 8071, Page 531, et seq., Register's Office for Davidson County, Tennessee.

**WITNESSETH:**

**WHEREAS**, all capitalized terms not otherwise defined herein shall have the meanings set forth in the Declaration of Covenants, Conditions and Restrictions for Bradford Hills, Section One a Residential Planned Unit Development ("Declaration"), of record in Book 8069, Page 170, et seq., Register's Office for Davidson County, Tennessee, and these By-Laws; and,

**WHEREAS**, pursuant to Article XIII, Section 1 of the By-Laws, the By-Laws may be amended at a regular or special meeting of the members by a vote of a majority of a quorum of members present in person or by proxy at such meeting; and,

**WHEREAS,** according to Article III, Section 4 of the By-Laws, a quorum of members shall be one-tenth (1/10) of the votes entitled to be cast by the members; and,

**WHEREAS,** as evidenced by their signatures below, the President and Secretary of Bradford Hills Homeowners' Association, Inc., certify that a annual meeting of the members was held on Oct 23, 2024, where a quorum of members, present in person or by proxy, made a motion which was seconded and carried by the affirmative vote of a majority of a quorum of members entitled to be cast, that this Amendment shall be adopted.

745



Exhibit 8

**NOW, THEREFORE,** by these presents, **Article III, Section 1, Annual Meetings,** of the ByLaws is hereby deleted in its entirety and replaced with the following:

<u>**Section 1. Annual Meetings**</u>.

(a) Meeting. Unless otherwise specified in written notice from the Board of Directors, an annual meeting of the Members of the corporation shall be held each year on the fourth Tuesday of the tenth month at 6:30 p.m. If the day of the annual meeting of the members is a legal holiday, the meeting will be held at the same hour of the following Tuesday which is not a legal holiday. At which time the Members shall elect Board of Directors whom terms are up, and shall transact such other business as may properly be brought before the meeting

(b) Place of Meeting. The Annual Meeting of the Members of the corporation may be held at a place to be determined by the Board of Directors within Davidson County, Tennessee.

**NOW, THEREFORE,** by these presents, **Article III, Section 5, Proxies,** of the ByLaws is hereby amended by adding the following sentence:

All proxies signed without a designated representative shall only be considered for "quorum" purpose only.

**NOW, THEREFORE,** by these presents, **Article IV, Section 2, Term of Office,** of the By-Laws is hereby amended by deleting the following sentence:

"...and at each annual meeting thereafter the members shall elect three directors for a term of three years."

And adding the following sentence in its place:

"...and at each annual meeting thereafter the members shall elect replacement directors for a term of three years."

**NOW, THEREFORE,** by these presents, **Article VII, Section 1, Powers,** of the ByLaws is hereby amended by adding the following subsection:

(f) adopt and publish the rules, regulations and standards governing individual "lot(s)" provided via the "Rules and Regulations committee (ART IX)". All new rules, regulations and standards shall have at minimum a sixty (60) day grace period for all "lots" to comply or submit a waiver to the Board. And to establish penalties for the infraction thereof.

**NOW, THEREFORE,** by these presents, **Article IX, Committees,** of the By-Laws is hereby amended by adding the following paragraph:

The Association shall also appoint a "Rules and Regulations" committee whose sole purpose is to provide the "Board of Directors" the rules, regulations and standards for governing all individual lots. This committee is to be made up of volunteer homeowners and co-chaired by one (1) board member. This committee is too present to the board one month before meeting of the members any new changes and validate existing ones yearly. The affairs of this committee shall be managed by a minimum of five (5) and maximum of nine (9) volunteers with terms of one (1) year.

**NOW, THEREFORE,** by these presents, **Article XIII, Section 1, Amendments,** of the By-Laws is hereby amended by adding the following sentence:

All amendments to these by-laws shall be recorded with the Register's Office for Davidson County, Tennessee.

Only the changes and amendments made by this Amendment to the By-Laws Bradford Hills Homeowners' Association, Inc. shall be changed. All other terms, conditions, restrictions and provisions of the By-Laws, shall survive and continue to remain in full force and effect.

**[Signature pages to follow]**

**IN WITNESS WHEREOF,** the undersigned have executed this instrument as of this the 22 of Oct, 2024.

**BRADFORD HILLS**
**HOMEOWNERS' ASSOCIATION, INC.**

By: James Summar
Its: President

STATE OF TENNESSEE)
COUNTY OF DAVIDSON)

Before me, a Notary Public in and for the State and County aforesaid, personally appeared **James Summar** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon his oath, acknowledged himself to be the President of Bradford Hills Homeowners' Association, Inc., and that he as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of the Association by himself as such President.

Witness my hand and official seal at Nashville, Davidson County, Tennessee, this 22nd day of October, 2024.

Notary Public

My Commission Expires:

KATHERINE HOLBROOK
STATE OF TENNESSEE
NOTARY PUBLIC
My Commission Expires on 05/05/2025
DAVIDSON COUNTY



Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 42 of 99 PageID #: 63

202411120088004

**AFFIDAVIT OF VOTE FOR AMENDMENT**
**BY**
**SECRETARY OF BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC.**

The undersigned, John Pyle, Secretary of Bradford Hills Homeowners' Association, Inc., certifies and affirms that in accordance with Article XIII, Section 1 of the By-Laws of Bradford Hills Homeowners' Association, Inc., a meeting of the Members was held on ___________, 2024 where a quorum of Members, present in person or by proxy, made a motion which was seconded and carried by the affirmative vote of a majority of a quorum of Members entitled to be cast, that this Amendment shall be adopted.

**BRADFORD HILLS**
**HOMEOWNERS' ASSOCIATION, INC.**

By: Lindsay Vrabic
Its: Secretary

STATE OF TENNESSEE)
COUNTY OF DAVIDSON)

Before me, a Notary Public in and for the State and County aforesaid, personally appeared **Lindsay Vrabic** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon her/his oath, acknowledged herself/himself to be the Secretary of Bradford Hills Homeowners' Association, Inc., and that she/he as such Secretary, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of the Association by herself/himself as such Secretary.

Witness my hand and official seal at Nashville, Davidson County, Tennessee, this 22nd day of October, 2024.

Notary Public

My Commission Expires:

KATHERINE HOLBROOK
STATE OF TENNESSEE NOTARY PUBLIC
My Commission Expires on 05/05/2025
DAVIDSON COUNTY





20241113008004

## Tennessee Certification of Electronic Document

I, Scott D. Weiss, do hereby make oath that I am a licensed attorney and/or the custodian of the original version of the electronic document tendered for registration herewith and that this electronic document is a true and exact copy of the original document executed and authenticated according to law on November 11, 2024.

Affiant Signature

11/11/2024
Date

State of TENNESSEE

County of DAVIDSON

Sworn to and subscribed before me this 11th day of November, 2024.

Notary's Signature

MY COMMISSION EXPIRES: 05/05/2025

NOTARY'S SEAL

VICKI M. THOMAS
STATE OF TENNESSEE NOTARY PUBLIC
DAVIDSON COUNTY

# Declaration of

# Covenants, Conditions, and Restrictions

# for

# Bradford Hills Homeowners' Association, Inc.

also known as

"Declarations"

or

"CCRs"

Filed: March 21, 1990

Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 45 of 99 PageID #: 66

Exhibit 9

instrument prepared by Dewey Pedigo, Jr., Atty., 301 Stahlman Bldg., Nashville, TN 37201



# DECLARATION

# OF COVENANTS, CONDITIONS AND RESTRICTIONS

# FOR

# BRADFORD HILLS, SECTION ONE

# A

# RESIDENTIAL PLANNED UNIT DEVELOPMENT

**THIS DECLARATION**, made on the date hereinafter set forth by **GILLESPIE MEADOWS, INC., A TENNESSEE CORPORATION**, hereinafter referred to as "Declarant".

**WITNESSETH:**

**WHEREAS**, Declarant is the owner of certain property in Nashville, County of Davidson, State of Tennessee, which is more particularly described as:

> Land in Davidson County, Tennessee, being Section One of Bradford Hills, a Residential P.U.D. of record in Book 7900, pages 110 - 112 Register's Office for Davidson County, Tennessee, described as follows:
>
> Starting at a point on the Westerly margin of Nolensville Road, said point being the most Northeasterly corner of Lot One on the plan of a resubdivision of Country Acres, as of record in Book 5210, Page 134, Register's Office Davidson County, Tennessee; thence with the Northerly line of said Lot One, South 87 degrees 48 minutes 30 seconds West, a distance of 200.02 feet to the POINT OF BEGINNING; thence continuing S 87 degrees 48 minutes 30" West a distance of 545.23 feet to a point; thence with the common line of the herein-described tract and the Surrey East states property as of record in Book 5869, page 940, Register's Office Davidson County, Tennesse, North 89 degrees 01 minutes 27seconds West, a distance of 303.80 feet to a point; thence continuing South 05 degrees 41 minutes 57 seconds West a distance of 572.91 feet to a point; thence leaving the East Easterly line of said Surrey East states property and severing said Gillespie property the following

calls:
North 60 degrees 03 minutes 18 seconds West a distance of 134.95 feet to a point; thence
North 35 degrees 50 minutes 45 seconds West a distance of 452.00 feet to a point; thence
South 54 degrees 09 minutes 15 seconds West a distance of 115.00 feet to a point; thence
South 35 degrees 50 minutes 45 seconds East a distance of 32.03 feet to a point; thence
South 54 degrees 09 minutes 15 seconds West a distance of 126.00 feet to a point; thence
North 32degrees 58 minutes 24 seconds West a distance of 161.30 feet to a point; thence with a curve to the right having a radius of 1363.64 feet, a delta of 00 degrees 06 minutes 11 seconds, a chord bearing of North 57 degrees 04 minutes 41 seconds East, an arc distance of 2.45 feet to a point; thence continuing
North 32 degrees 57 minutes 14 seconds West a distance of 2.45 feet to a point; thence
North 07 degrees 35 minutes 04 seconds West a distance of 75.88 feet to a point; thence
North 07 degrees 15 minutes 23 seconds East a distance of 84.00 feet to a point; thence
North 82 degrees 44 minutes 37 seconds West a distance of 23.90 feet to a point; thence
North 07 degrees 15 minutes 23 seconds East a distance of 130.00 feet to a point; thence
North 11 degrees 27 minutes 42 seconds East a distance of 68.18 feet to a point; thence
South 56 degrees 34 minutes 56 : East a distance of 63.51 feet to a point thence
South 83 degrees 23 minutes 59 seconds East a distance of 122.17 feet to a point; thence
North 78 degrees 27 minutes 58 seconds East a distance of 108.64 feet to a point; thence
North 50 degrees 13 minutes 50 seconds East a distance of 68.64 feet to a point; thence
North 65 degrees 03 minutes 18 seconds East a distance of 41.40 feet to a point; thence
North 72 degrees 25 minutes 56 seconds East a distance of 64.00 feet to a point; thence
North 81 degrees 29 minutes 06 seconds East a distance of 152.06 feet to a point; thence
North 87 degrees 11 minutes 19 seconds East a distance of 149.80 feet to a point; thence
North 23 degrees 41 minutes 29 seconds East a distance of 94.16 feet to a point; thence
North 03 degrees 19 minutes 42 seconds West a distance of 132.10 feet to a point; thence
North 89 degrees 20 minutes 24 seconds East a distance of 60.44 feet to a point; thence
South 17 degrees 58 minutes 13 seconds East a distance of 134.73 feet to a point; thence

South 34 degrees 09 minutes 58 seconds East a distance of 120.22 feet to a point; thence North 82 degrees 42 minutes 13 seconds East a distance of 58.81 feet to a point; thence North 75 degrees 17 minutes 57 seconds East a distance of 185.12 feet to a point; thence North 61 degrees 56 minutes 18 seconds East a distance of 70.84 feet to a point; thence North 66 degrees 04 minutes 23 seconds East a distance of 378 feet to a point; thence South 13 degrees 42 minutes 49 seconds East a distance of 171.85 feet to a point; thence South 01 degrees 11 minutes 00 seconds West a distance of 90.00 feet to a point; thence South 88 degrees 49 minutes 00 seconds East a distance of 150.71 feet to a point; thence with a curve to the left having a radius of 30.00 feet, a delta of 88 degrees 38 minutes 29 seconds, a chord bearing of North 46 degrees 51 minutes 45 seconds East, an arc distance of 46.41 feet to a point; thence South 87 degrees 27 minutes 29 seconds East a distance of 10.00 feet to a point in the Westerly margin of Nolensville Road; thence with the Westerly margin of Nolensville Road, and with a curve to the left having a radius of 2490.70 feet, a delta of 02 degrees 43 minutes 02 seconds, a chord bearing of South 01 degrees 11 minutes 00 seconds West, an arc distance of 118.12 feet to a point; thence leaving said margin of Nolensville Road South 89 degrees 49 minutes 29 seconds West a distance of 10.00 feet to a point; thence with a curve to the left having a radius of 30.00 feet, a delta of 88 degrees 38 minutes 29 seconds, a chord bearing of North 44 degrees 29 minutes 45 seconds West, an arc distance of 46.41 feet to a point; thence North 88 degrees 49 minutes 00 seconds West a distance of 150.71 feet to a point; thence South 00 degrees 42 minutes 17 seconds East a distance of 291.13 feet to the POINT OF BEGINNING, containing 21.19 acres, more or less.

Being part of the same property conveyed to Gillespie Meadows, Inc. by deed from C.A. Gillespie, III, et ux, et al, of record in Book 7964, page 770, said Register's Office.

**NOW THEREFORE,** Declarant hereby declares that all of the properties described above shall be held, sold and conveyed subject to the following easements, restrictions, covenants, and conditions, which are for the purpose of protecting the value and desirability of , and which shall run with, the real property and be binding on all parties having any right, title or interest in the described parties or any part thereof, their

heirs, successors and assigns, and shall inure to the benefit of each owner thereof.



## ARTICLE I

## DEFINITIONS

<u>Section 1.</u> "Association" shall mean and refer to Bradford Hills Homeowners' Association, Inc., its successors and assigns.

<u>Section 2.</u> "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title to any Lot which is a part of the Properties, including contract sellers, but excluding those having such interest merely as security for the performance of an obligation.

<u>Section 3.</u> "Properties" shall mean and refer to that certain real property hereinbefore described, and such additions thereto as may hereafter be brought within the jurisdiction of the Association.

<u>Section 4.</u> "Common Area" shall mean all real property (including the improvements thereto) owned by the Association for the common use and enjoyment of the owners. The Common Area to be owned by the Association at he time of the conveyance of the first lot is described as follows:

Land in Davidson County, Tennessee, being three (3) parcels of land designated as "open space" on the Plan of Section One, Bradford Hills a residential P.U.D. of record in Book 7900, pages 110 - 112, Register's Office for Davidson County, Tennessee, described as follows:

**PARCEL 1:** Beginning at a oint on the southerly margin of Bradford Hills Drive, said point being the northwesterly front corner of Lot No. 49 on said Plan of Section One, Bradford Hills, a Residential P.U.D.; thence S 2° 34' 09" W, 120.00 feet to a point; thence S 61° 05' 20" E, 183.82 feet to a point; thence N 89° 01' 27" W, 303.80 feet to a concrete monument; thence N 31° 49' 35" E, 69.81 feet to a point; thence N 13° 16' 04" W, 160.00 feet to a point on the southerly margin of Bradford Hills Drive; thence with said southerly margin of Bradford Hills Drive in an easterly direction a distance of 101.91 feet to the point of beginning and containing 23,456 square feet, more or less.

**PARCEL 2:** Beginning at a point on the northerly margin of Bradford Hills Drive, said point being the southeasterly front corner of Section One, Bradford Hills, a Residential P.U.D.; thence N



Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 49 of 99 PageID #: 70

7° 16' 55" E, 121.18 feet to a point; thence S 87° 11' 19" W, 62.97 feet to a concrete monument; thence N 23° 41' 29" E, 94.16 feet to a concrete monument; thence N 3° 19' 42" W, 132.10 feet to a concrete monument; thence N 89° 20' 24" E 60.44 feet to a concrete monument; thence S 17° 58' 13" E, 134.73 feet to a concrete monument; thence S 34° 09' 58" E, 120.22 feet to a concrete monument; thence S 82° 42' 13" W, 62.25 feet to a point; S 3° 35' 55" W, 110.00 feet to a point on the northerly margin of Bradford Hills Drive; thence with said northerly margin of Bradford Hill Drive in a westerly direction, a distance of 84.05 feet to the point of beginning and containing 33,378 square feet, more or less.

**PARCEL 3:** Beginning at a point on the southwesterly margin of Spring Trail, said point being the northwesterly front corner of Lot No. 35 on said Plan of Section One, Bradford Hills, a Residential P.U.D.; thence S 1° o5' 11" W, 100.00 feet to a point; thence N 84° 29' 04" E, 170.28 feet to a concrete monument; thence S 5° 41' 57" E, 292.91feet to a concrete monument; thence N 35° 50' 45" W, 381.45 feet to a point,said point being the southeasterly rear corner of Lot No. 34 on the herebefore mentioned Plan; thence N 41° 17' 51" E, 122.61 feet to a point on the southwesterly margin of Spring Trail; thence with said margin S 48° 42' 09" E 126.78 feet to a concrete monument; thence continuing with said margin around a curve to the left a distance of 28.07 feet to the point of beginning and containing 74,191 square feet, more or less.

Said three (3) parcels described above is part of the same property conveyed to Gillespie Meadows, Inc., a Tennessee Corporation by deed from C.A. Gillespie, III et ux, et al of record in Book 7964, page 770, Register's Office for Davidson County, Tennessee.

Section 5. "Lot" shall mean and refer to any plot of land shown upon any recorded subdivision map of the Properties with the exception of the Common Area.

Section 6. "Declarant" shall mean and refer to Gillespie Meadows Inc., a Tennessee Corporation, its successors and assigns if such successors or assigns should acquire more than one undeveloped Lot from the Declarant for the purpose of development.

ARTICLE II

PROPERTY RIGHTS

Section 1. Owner's Easements of Enjoyment. Every owner shall have a right and easement of enjoyment in and to the common Area which shall be appurtenant to and shall pass with the title of every Lot, subject to the following provisions:

(a) the ritht of the Association to charge reasonable admission and other fees for the use of any recreational facility situated upon the Common Area;

(b) the right of the Association to suspend the voting rights and right use of the recreational facilities by an owner for any period during which any assessment against his Lot remains unpaid; and for a period not to exceed 60 days for an infraction of its published rules and regulations.

(c) the right of the Association to dedicate or transfer all or any part of the Common Area to any public agency, authority, or utility for such purpose and subject to such conditions as may be agreed to by the members.

No such dedication or transfer shall be effective unless an instrument agreeing to such dedication or transfer signed by 2/3rds of each class of member has been recorded.

Section 2. Delegation of Use. Any owner may delegate, in accordance with the By-Laws, his right of enjoyment to the Common Area and facilities to the members of his family, his tenants, or contract purchasers who reside on the property.

ARTICLE III

MEMBERSHIP AND VOTING RIGHTS

Section 1. Every owner of a lot which is subject to assessment shall be a member of the Association. Membership shall be appurtenent to and may not be separated from ownership of any Lot which is subject to assessment.

Section 2. The Association shall have two classes of voting membership.

Class A. Class A members shall be all Owners, with the exception of the Declarant, and shall be entitled to one vote for each Lot owned. When more than one person holds an interest in any Lot, all such persons shall be members. The vote for such Lot shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any Lot.

Class B. The Class B member(s) shall be the Declarant and shall be entitled to three (3) votes for each Lot owned. The Class B membership shall cease and be converted to Class A membership on the happening of either of the following events, whichever occurs earlier:

(a) when the total votes outstanding in a Class A membership equal the total votes outstanding in the Class B membership, or

(b) on January 1, 1998.



## ARTICLE IV

## COVENANT FOR MAINTENANCE ASSESSMENTS

Section 1. Creation of the Lien and Personal Obligation of Assessments. The Declarant, for each Lot owned within the Properties, hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in the deed, is deemed to covenant and agree to pay the Association; (1) annual assessments or charges, and (2) special assessments for capital improvements, such assessments to be established and collected as hereinafter provided. The annual and special assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs, and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessment shall not pass to his successors in title unless expressly assumed by them.

Section 2. Purpose of Assessments. The assessments levied by the Association shall be used exclusively to promote the recreation, health, safety, and welfare of the residents in the Properties and for the improvement and maintenance of the Common Area.

Section 3. Maximum Annual Assessment. Until January 1 of the year immediately following the conveyance of the first Lot to the Owner, the maximum annual assessment shall be Fifty dollars ($50.00) per Lot.

(a) From and after January 1 of the year immediately following the conveyance of the first Lot to an Owner, the maximum annual assessment may be increased each year not more than 5% above the maximum assessment for the previous year without a vote of the membership.

(b) From and after January 1 of the year immediately following the conveyance of the first Lot to an Owner, the maximum annual assessment may be increased above 5% by a vote of two-thirds (2/3) of each class of members who are voting in person or by proxy, at a meeting duly called for this purpose.

(c) The Board of Directors may fix the annual assessment at any amount not in excess of the maximum.

Section 4. Special Assessment for Capital Improvements. In addition to the annual assessments authorzied above, the Association may levy, in any assessement year, a special assessment applicable to that year only for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Area, including fixtures and personal property related thereto, provided that any such assessments shall have the assent of two-thirds (2/3) of the votes

of each class of members who are voting in person or by proxy at a meeting duly called for this purpose.

Section 5. Notice and Quorum for Any Action Authorized Under Sections 3 and 4. Written notice of any meeting called for the purpose of taking any action authorized under Section 3 or 4 shall be sent to all members not less than 30 days nor more than 60 days in advance of the meeting. At the first such meeting called, the presence of members or of proxies entitled to cast sixty percent (60%) of all the votes of each class of membership shall constititute a quorum. If the required quorum is not present, another meeting may be called subject to the same notice requirement, and the required quorum at the subsequent meeting sahll be one-half (½) of the required quorum at the proceding meeting. No such subsequent meeting shall be held more than 60 days following the proceding meeting.

Section 6. Uniform Rate of Assessment. Both annual and special assessments must be fixed at a uniform rate for all Lots and may be collected on a monthly basis.

Section 7. Date of Commencement of Annual Assessments: Due Dates. The annual assessments provided for herein shall commence as to all Lots on the first day of the month following the conveyance of the Common Area. The first annual assessment shall be adjusted according to the number of months remaining in the calendar year. The Board of Directors shall fix the amount of the annual assessment against each Lot at least thirty (30) days in advance of each annual assessment period. Written notice of the annual assessment shall be sent to every Owner subject thereto. The due dates shall be established by the Board of Directors. The Association shall, upon demand, and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the asessment on a specific Lot have been paid. A properly executed certificate of the Association as to the status of assessments on a lot is binding upon the Association as of the date of its issuance.

Section 8. Effect of Nonpayment of Assessments: Remedies of the Association. Any assessment not paid within thirty (30) days after the due date shall bear interest from the date due at the rate of 6 percent per annum. The Associates may foreclose the lien against the property. No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

Section 9. Subordination of the Lien to Mortgages. The lien of the assessments provided for herein shall be subordinate to the lien of the first motrgage. Sale or transfer of any Lot shall not affect the assessment lien. However, the sale or transfer of any Lot pursuant to mortgage foreclosure or any proceeding in lieu thereof, shall extinguish the lien of such

assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve such Lot from liability for any assessments thereafter becoming due or from the lien thereof.

Section 10. Failure to Maintain. In the event of the failure by the Declarant or Association to properly maintain the common areas and facilities, such maintenance may be assumed by public authority pursuant to the provisions of Section 81.51 of the Comprehensive Zoning Ordinace of the Metropolitan Government of Nashville, Davidson County, Tennessee, as hereinafter set forth.

81.51 Common open space. Any common open space established by an abopted final master development plan for a planned unit development shall be subject to the following:

(a) The Metropolitan Planning Commission and the Metropolitan County Council may require that the landowner provide for and establish an organization for the ownership and maintenance of any common open space, and such organizstion shall not be dissolved nor shall it dispose of any common open space, by sale or otherwise (except to an organization conceived and established to own and maintain the common open space), without first offering to dedicate the same to the Metropolitan Government of Nashville and Davidson County and the said dedication be approved by the Metropolitan Planning Commission. However, the conditions of any transfer shall conform to the adopted final master development plan.

(b) In the event that the organization established to own and maintain common open space, or any successor organization, shall at any time after the establishment of the planned unit development fail to maintain the common open space in reasonable order and condition in accordance with the adopted master development plan, the zoning administrator may serve written notice upon such oerganization and/or the owner or residents of the planned unit development and hold a public hearing. After thirty (30) days when deficiencies of maintenance are not corrected, the zoning adminsitrator shall call upon any public or private agency to maintain the common open space for a period of one year. When the zoning administrator determines that the organization is not prepared for the maintenance for the common open space such agency shall continue maintenance for yearly periods.

(c) The cost of such maintenance by such agency shall be assessed proportionally against the properties within the planned unit development that have a right of enjoyment of the common open space, and shall become a lien on said properties.

Any rights or powers granted in the Code section above shall be subordinate to the rights of a first mortgagee of any condominium unit or planned unit development.

## ARTICLE V

## ARCHITECTURAL CONTROL

No building, fence, wall or other structure shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change or alteration therein by made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the Association, or by an architectural committee composed of three (3) or more representatives appointed by the Boar. In the event said Board, or its designated committee, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and this Article will be deemed to have been fully complied with.

## ARTICLE VI

## ADDITIONAL RESTRICTIONS

Section 1. No lots shall be used except for residential purposes with the exception of sales models, construction trailer and equipment of the Builder or Developer during development and sale of subdivision.

Section 2. All houses shall have at least eleven hundred (1,100) square feet of living area.

Section 3. No noxious or offensive activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

Section 4. No animals shall be raised, bred or kept on any lot, except that dogs, cats and other household pets may be kept inside. At no time shall pets be allowed to roam freely into someone elses yard or be allowed to distrub neighbors by barking or other loud noises.

Section 5. It is the responsibility of the Builder to grade, seed and straw all yards including the planting of live shrubbery per VA specifications. It is the responsibility of the homeowner to maintain the seeding, mowing and watering of all lawns and shrubbery, the cutting and pruning of all trees and shrubbery and keep his or her lot and the structure thereon in good order and repair, including but not limited the above lawn maintenance, being fee of rubbish, and painting of the structure all in a manner and with such frequency as is consisting with good property management. If this is not done, the Homeowners' Association has the right to perform these

services and place a lien on the property to insure payment.

Section 6. The parking or storage of buses, tractor trailers, recreational vehicles or motor homes, house trailers, junk or wrecked or any non-operative vehicle is not permitted. Furthermore, no vehicle shall be disassembled and worked on in any area of the recorded subdivision.

Section 7. All vehicles are to be parked in driveway areas and no permanent street parking is permitted.

Section 8. Only spindle type clothes lines are permitted and they are to be erected in rear yard only.

Section 9. Satellite dishes are permitted, but their location is restricted to the rear yard, only.

## ARTICLE VII

## GENERAL PROVISIONS

Section 1. Enforcement. The Association, or any Owner, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covnants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration. Failure by the Association or by the Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

Section 2. Severability. Invalidation of any one of these covenants or restrictions by judgment or court order shall in no wise affect any other provisions which shall remain in full force and effect.

Section 3. Amendment. The covenants and restrictions of the Declaration shall run with and bind the land, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years. The Declaration may be amended during the first twenty (20) year period by an instrument signed by not less than ninety percent (90%) of the Lot Owners, and thereafter by an instrument signed by not less than seventy-five percent (75%) of the Lot Owners. Any amendment must be recorded.

Section 4. Annexation. Additional land within the area described in Deed Book 7964, page 770, of the land records of the Register of Deed for Davidson County, Tennessee may be annexed by the Declarant without the consent of members within eight (8) years of the date of this instrument provided that the FHA and the VA determine that the annexation is in accord with the general plan heretofore approved by them.

Section 5. FHA/VA Approval. As long as there is a Class



Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 56 of 99 PageID #: 77

B membership, the following actions will require the prior approval of the Federal Housing Administration or the Veterans Administration: Annexation of additional properties, dedication of Common Area, and amendment of this Declaration of Covenants, Conditions and Restrictions.

**IN WITNESS WHEREOF,** the undersigned, being the Declarant herein, has hereunto set its hand and seal this 16th day of March, 1990.

GILLESPIE MEADOWS, INC., Declarant

By: Paul E Johnson President
PAUL E. JOHNSON, PRESIDENT

**STATE OF TENNESSEE**
**COUNTY OF DAVIDSON**

Before me, the undersigned a Notary Public in and for the State and County aforesaid, personally appeared Paul E. Johnson with whom I am personally acquainted, (or proved to me on the basis of satisfactory evidence), and who, upon oath acknowledged himself to be the President of the Gillespie Meadows, Inc a corporation, and that he as such President, executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself as President.

Witness my hand and official seal Nashville, Tennessee, this 16th day of March, 1990.

Johnnie A Andrews Luken
Notary Public
Commission Expires 1/23/94

12487

IDENTIF. TREFERENCE

MAR 21 11 04 AM '90

DAVIDSON COUNTY TN.

RUSH

4408 03/21 0101 03CHECK 36.00

his instrument prepared by Dewey Pedigo, Jr., Atty., 301 Stahlman Bldg., Nashville, Tenn. 37201



# BY-LAWS
# OF
# BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC.

## ARTICLE I

**NAME AND LOCATION.** The name of the corporation is Bradford Hills Homeowners' Association, Inc., hereinafter referred to as the "Association". The principal office of the corporation shall be located at 301 Stahlman Building, Nashville, Tennessee. 37201 but meetings of members and directors may be held at such places within the State of Tennessee, County of Davidson, as may be designated by the Board of Directors.

## ARTICLE II

## DEFINITIONS

Section 1. "Association" shall mean and refer to Bradford Hills Homeowners' Association, Inc., its successors and assigns.

Section 2. "Properties" shall mean and refer to certain real property described in the Declarations of Covenants, Conditions and Restrictions, and such additions thereto as may hereafter be brought within the jurisdiction of the Association.

Section 3. "Common Area" shall mean all real property owned by the Association for the common use and enjoyment of the Owners.

Section 4. "Lot" shall mean and refer to any plot of land shown upon any recorded subdivision map of the Properties with the exception of the Common Area.

Section 5. "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of the fee simple title to any Lot which is part of the Properties, including contract sellers, but excluding those having such interest merely as security for the performance of an obligation.

Section 6. "Declarant" shall mean and refer to Gillespie Meadows, Inc., a Tennessee Corporation, its successors and assigns if such successors or assigns should acquire more than one undeveloped Lot from the Declarant for the purpose of development.

Section 7. "Declaration" shall mean and refer to the Declaration of Covenants, Conditions and Restrictions applicable to the Properties recorded in the Office of Register of Deeds





Exhibit 10

Nashville, Davidson County, Tennessee.

Section 8. "Member" shall mean and refer to those persons entitled to membership as provided in the Declaration.

## ARTICLE III

## MEETINGS OF MEMBERS

Section 1. Annual Meetings. The first annual meeting of the members shall be held within one year from the date of incorporation of the Association, and each subsequent regular annual meeting of the members shall be held on the same day of the same month each year thereafter, at the hour of 7:30 o'clock, P.M. If the day of the annual meeting of the members is a legal holiday, the meeting will be held at the same hour of the first day following which is not a legal holiday.

Section 2. Special Meetings. Special meetings of the members may be called at any time by the president or by the Board of Directors, or upon written request of the members who are entitled to vote one-fourth (¼) of all of the votes of the Class A membership.

Section 3. Notice of Meetings. Written notice of each meeting of the members shall be given by, or at the direction of, the secretary or person authorized to call the meeting, by mailing a copy of such notice, postage prepaid, at least 15 days before such meeting to each member entitled to vote thereat, addressed to the member's address last appearing on the books of the Association, or supplied by such member of the Association for the purpose of notice. Such notice shall specify the place, day or hour of the meeting, and, in the case of a special meeting, the purpose of the meeting.

Section 4. Quorum. The presence at the meeting of members entitled to cast, or of proxies entitled to cast, one-tenth (1/10) of the votes of each class of membership shall constitute a quorum for any action except as otherwise provided in the Articles of Incorporation, the Declaration, or these By-Laws. If, however, such quorum shall not be present or represented at any meeting, the members entitled to vote thereat shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum as aforesaid shall be present or be represented.

Section 5. Proxies. At the meetings of members, each member may vote in person or by proxy. All proxies shall be in writing and filed with the secretary. Every proxy shall be revocable and shall automatically cease upon conveyance by the member of his Lot.

## ARTICLE IV

## BOARD OF DIRECTORS: SELECTION: TERM OF OFFICE

Section 1. Number. The affairs of this Association shall be managed by a Board of Three (3) directors, who need not be members of the Association.

Section 2. Term of Office. At the first annual meeting the members shall elect one director for a term of one year, one director for a term of two years and one director for a term of three years; and at each annual meeting thereafter the members shall elect three directors for a term of three years.

Section 3. Removal. Any director may be removed from the Board, with or without cause, by a majority vote of the members of the Association. In the event of death, resignation or removal of a director, his successor shall be selected by the remaining members of the Board and shall serve for the unexpired term of his predecessor.

Section 4. Compensation. No director shall receive compensation for any service he may render to the Association. However, any director may be reimbursed for his actual expenses incurred in the performance of his duties.

Section 5. Action Taken Without a Meeting. The directors shall have the right to take any action in the absence of a meeting which they could take a meeting to obtaining the written approval of all the directors. Any action so approved shall have the same effect as though taken at a meeting of the directors.

## ARTICLE V

## NOMINATION AND ELECTION OF DIRECTORS

Section 1. Nomination. Nomination for election to the Board of Directors shall be made by a Nominating Committee. Nominations may also be made from the floor at the annual meeting. The Nominating Committee shall be appointed by the Board of Directors prior to each annual meeting of the members, to serve from the close of such annual meeting until the close of the next annual meeting and such appointment shall be announced at each annual meeting. The Nominating Committee shall make as many nominations for election to the Board of Directors as it shall in its discretion determine, but not less than the number of vacancies that are to be filled. Such nominations may be made from among members or non-members.

Section 2. Election. Election to the Board of Directors shall be by secret written ballot. At such election the members or their proxies may cast, in respect to each vacancy, as many votes as they are entitled to exercise under the provisions of the Declaration. The person receiving the largest number of votes shall be elected. Cumulative voting is not permitted.

## ARTICLE VI

## MEETINGS OF DIRECTORS

Section 1. Regular Meetings. Regular meetings of the Board of Directors shall be held monthly without notice, at such place and hour as may be fixed from time to time by resolution of the Board. Should said meeting fall upon a legal holiday, then that meeting shall be held at the same time on the next day which is not a legal holiday.

Section 2. Special Meetings. Special meetings of the Board of Directors shall be held when called by the president of the Association, or by any two directors, after not less that three (3) days notice to each director.

Section 3. Quorum. A majority of the number of directors shall constitute a quorum for the transaction of business. Every act or decision done or made by a majority of the directors present at a duly held meeting at which a quorum is present shall be regarded as the act of the Board.

## ARTICLE VII

## POWERS AND DUTIES OF THE BOARD OF DIRECTORS

Section 1. Powers. The Board of Directors shall have power to:

(a) adopt and publish rules and regulations governing the use of the Common Area and facilities, and the personal conduct of the members and their guests thereon, and to establish penalties for the infraction thereof;

(b) suspend the voting rights and rights to use of the recreational facilities of the member during any period in which such member shall be in default in the payment of any assessment levied by the Association. Such rights may also be suspended after notice and hearing, for a period not to exceed 60 days for infraction of published rules and regulations;

(c) exercise for the Association all powers, duties and authority vested in or delegated to this Association and not reserved to the membership by other provisions of these By-Laws, the Articles of Incorporation, or the Declaration;

(d) declare the office of a member of the Board of Directors to be vacant in the event such member shall be absent from three (3) consecutive regular meetings of the Board of Directors; and

(e) employ a manager, an independent contractor, or such other employees as they deem necessary, and to prescribe their



Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 61 of 99 PageID #: 82

duties.

Section 2. Duties. It shall be the duty of the Board of Directors to:

(a) cause to be kept a complete record of all its acts and corporate affairs and to present a statement thereof to the members at the annual meeting of the members, or at any special meeting when such statement is requested in writing by one-fourth (¼) of the Class A members who are entitled to vote:

(b) supervise all officers, agents and employees of this Association, and to see that their duties are properly performed;

(c) as more fully provided in the Declaration, to:

(1) fix the amount of the annual assessment against each Lot at thirty (30) days in advance of each annual assessment period;

(2) send written notice of each assessment to every Owner subject thereto at thirty (30) day in advance of each annual assessment period; and

(3) foreclose the lien against any property for which assessments are not paid within thirty (30) days after due date or to bring an action at law against the owner personally obligated to pay the same.

(d) issue, or to cause an appropriate office to issue, upon demand by any person, a certificate setting forth whether or not any assessment has been paid. A reasonable charge may be made by the Board for the issuance of these certificates. If a certificate states an assessment has been paid, such certificate shall be conclusive evidence of such payment;

(e) procure and maintain adequate liability and hazard insurance on property owned by the Association;

(f) cause all officers or employees having fiscal responsibilites to be bonded, as it may deem appropriate:

(g) cause the Common Area to be maintained.

## ARTICLE VIII

## OFFICERS AND THEIR DUTIES

Section 1. Enumeration of Offices. The officers of this Assoication shall be a president and vice-president, who shall at all times be members of the Board of Directors, a secretary, and a treasurer, and such other officers as the Board

may from time to time by resolution create.

Section 2. Election of Officers. The election of officers shall take place at the first meeting of the Board of Directors following each annual meeting of the members.

Section 3. Term. The officers of this Association shall be elected annually by the Board and each shall hold office for one (1) year unless he shall sooner resign, or shall be removed, or otherwise disqualified to serve.

Section 4. Special Appointments. The board may elect such other officers as the affairs of the Association may require, each of whom shall hold office for such period, have such authority, and perform such duties as the Board may, from time to time, determine.

Section 5. Resignation and Removal. Any officer may be removed from office with or without cause by the Board. Any officer may resign at any time giving written notice to the Board, the president or the secretary. Such resignation shall take effect on the date of receipt of such notice or at any later time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 6. Vacancies. A vacancy in any office may be filled by appointment by the Board. The officer appointed to such vacancy shall serve for the remainder of the term of the office he replaces.

Section 7. Multiple Offices. The offices of secretary and treasurer may be held by the same person. No person shall simultaneously hold more than one of any of the other offices except in the case of special offices created pursuant to Section 4 of this Article.

Section 8. Duties. The duties of the officers are as follows:

**PRESIDENT**

(a) The President shall preside at all meetings of the board of Directors; shall see that orders and resolutions of the Board are carried out; shall sign all leases, mortgages, deeds and other written instruments and shall co-sign all checks and promissory notes.

**VICE-PRESIDENT**

(b) The vice-president shall act in the place and stead of the president in the event of his absence, inability or refusal to act, and shall exercise and discharge such other duties as may be required of him by the Board.

## SECRETARY

(c) The secretary shall record the votes and keep the minutes and proceedings of the Board and of the members; serve notice of meetings of the board and of the members; keep appropriate current records showing the members of the Association together with their addresses, and shall perform such other duties as required by the Board.

## TREASURER

(d) The treasurer shall receive and deposit in appropriate bank accounts all monies of the Association and shall disburse such funds as directed by resolution of the Board of Directors; shall sign all checks and promissory notes of the Association; keep proper books of account; cause an annual audit of the Association books to be made by a public accountant at he completion of each fiscal year; and shall prepare an annual budget and a statement of income and expenditures to be presented to the membership at its regular annual meeting, and deliver a copy of each to the members.

## ARTICLE IX

## COMMITTEES

The Association shall appoint an architectural Control Committe, as provided in the Declaration, and a Nominating Committee, as provided in these By-Laws. In addition, the Board of Directors shall appoint other committees as deemed appropriate in carrying out its purpose.

## ARTICLE X

## BOOKS AND RECORDS

The books, records and papers of the Association shall at all time, during reasonable business hours, be subject to inspection by any member. The Declaration, the Articles of Incorporation and the By-Laws of the Association shall be available for inspection by any member at the principal office of the Association, where copies may be purchased at reasonable cost.

## ARTICLE XI

## ASSESSMENTS

As more fully provided in the Declarations, each member is obligated to pay the Association annual and special assessments which are secured by a continuing lien upon the property agaisnt which the assessment is made. Any assessments which are not paid when due shall be delinquent. If the

assessment is not paid within thirty (30) days after the due date, the assessment shall bear interest from the date of delinquency at the rate of 6 percent per annum, and the Association may bring an action at law against the Owner personally obligated to pay the same or foreclose the lien against the property, and interest, costs, and reasonable attorney's fee of any such action shall be added to the amount of such assessment. No Owner may waiver or otherwise escape liability for the assessments provided for herein by nonuse of the Common Area or abandonment of his Lot.

## ARTICLE XII

## CORPORATE SEAL

The Association shall not have a seal.

## ARTICLE XIII

## AMENDMENTS

Section 1. These By-Laws may be amended, at a regular or special meeting of the members, by a vote of a majority of a quorum or members present in person or by proxy, except that the Federal Housing Administration or the Veterans Administration shall have the right to veto amendments while there is a Class B membership.

Section 2. In the case of any conflict between the Article of Incorporation and these By-Laws, the Articles shall control; and in the case of any conflict between the Declaration and these By-Laws, the Declaration shall control.

## ARTICLE XIV

## MISCELLANEOUS

The fiscal year of the Association shall begin on the first day of January and end on the 31st day of December of every year, except that the first fiscal year shall begin on the date of incorporation.

IN WITNESS WHEREOF, we, being all of the directors of the BRADFORD HILLS HOMEOWNERS' ASSOCIATIONS, INC. have hereunto set our hand this 16th day of March, 1990.

BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC.

BY: Paul E. Johnson
PAUL E. JOHNSON - DIRECTOR

BY: Maxine Sullivan
MAXINE SULLIVAN - DIRECTOR

BY: ______________________________
FRED YAZDIAN - DIRECTOR

BOOK 8071 PAGE 539

STATE OF TENNESSE
COUNTY OF DAVIDSON

Before me, the undersigned a Notary Public in and for the State and County aforesaid, personally appeared Paul E. Johnson, Maxine Sullivan and Fred Yazdain with whom I am personally acquainted, (or proved to me on the basis of satisfactory evidence), and who upon oath, acknowledged themselves to be all of the members of the Board of Directors of the Bradford Hills Homeowner's Association, Inc. a corportion, and that they as such Directors, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by themselves as Directors.

Witness my hand and offical seal at Nashville, Tennessee, this 16th day of March, 1990.

Johnnie A. Andrews Lieber
NOTARY PUBLIC

Commission Expires: 1-23-94

NOTARY PUBLIC

**CERTIFICATION**

I, the undersigned, do hereby certify:

THAT I am the duly elected and acting secretary of the Bradford Hills Homeowners' Association, Inc., a Tennessee Corporation, and

THAT the foregoing By-Laws constitute the original By-Laws of said Association, as duly adopted at the meeting of the Board of Directors thereof, held on the 16th day of March, 1990.

Maxine Sullivan
Secretary

13162

IDENTIF. REFERENCE

MAR 23 1 14 PM '90

DAVIDSON COUNTY TN.

RUSH



5241 03/23 0101 03CHECK 27.00

# Charter and Bylaws

for

# Bradford Hills Homeowners' Association, Inc.

Charter also known as

"Articles"

or

"Articles of Incorporation"

Filed: March 23, 1990

Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 67 of 99 PageID #: 88

Exhibit 11

**Secretary of State**
**Corporations Section**
**James K. Polk Building, Suite 1800**
**Nashville, Tennessee 37243-0306**


DATE: 03/23/90
REQUEST NUMBER: 1593-0039
TELEPHONE CONTACT: (615) [illegible]
FILE DATE/TIME: 03/23/90 1249
EFFECTIVE DATE/TIME: 03/23/90 1249
CONTROL NUMBER: 0226709

TO:
DEWEY PEDIGO JR
301 STAHLMAN BLDG

NASHVILLE, TN 37201

BOOK 8071 PAGE 520

RE:
BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC
CHARTER - NONPROFIT

CONGRATULATIONS UPON THE INCORPORATION OF THE ABOVE ENTITY IN THE STATE OF TENNESSEE. THE CHARTER DOCUMENT IS ENCLOSED AND IS EFFECTIVE AS INDICATED ABOVE.

PLEASE BE ADVISED THAT THIS DOCUMENT MUST ALSO BE FILED IN THE OFFICE OF THE REGISTER OF DEEDS IN THE COUNTY WHEREIN A CORPORATION HAS ITS PRINCIPAL OFFICE IF SUCH PRINCIPAL OFFICE IS IN TENNESSEE.

A CORPORATION ANNUAL REPORT MUST BE FILED WITH THE SECRETARY OF THE STATE ON OR BEFORE THE FIRST DAY OF THE FOURTH MONTH FOLLOWING EACH ANNIVERSARY DATE OF INCORPORATION. THIS OFFICE WILL MAIL THE REPORT [illegible] ANNIVERSARY MONTH TO THE CORPORATION AT THE ADDRESS OF ITS PRINCIPAL OFFICE OR TO A MAILING ADDRESS PROVIDED TO THIS OFFICE IN [illegible] OR TO MAINTAIN A REGISTERED AGENT [illegible] THE CORPORATION TO ADMINISTRATIVE DISSOLUTION.

[illegible] WITH THIS OFFICE OR SUBMITTING DOCUMENTS FOR FILING, PLEASE REFER TO THE CORPORATION CONTROL NUMBER GIVEN ABOVE.

4 3 1 6 1
IDENTIF. REFERENCE
MAR 23 1 14 PM '90
DAVIDSON COUNTY
RUSH

5239 03/23 0101 03CHECK 8.

FOR: CHARTER - NONPROFIT

FROM:

RECEIVED:
ON DATE:
RECEIPT NUMBER:
ACCOUNT NUMBER:

RECORDERS MEMO
LEGIBILITY OF WRITING, TYPING OR PRINTING ON THIS DOCUMENT UNSATISFACTORY WHEN RECEIVED

THE GREAT SEAL OF THE STATE OF TENNESSEE
XVI
AGRICULTURE
COMMERCE

Bryant Millsaps
BRYANT MILLSAPS
SECRETARY OF STATE

FILED

CHARTER ... 

AND ...

MAR 23 ... 12:43

BOOK 8071 PAGE 521

# ARTICLES OF INCORPORATION

# OF

# BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC.

In compliance and pursuant with the requirements of the Tennessee Business Corporation Act, the undersigned, a resident of Brentwood, Williamson County, Tennessee and being of full age, has this day voluntarily formed a corporation not for profit and does hereby certify:

## ARTICLE I

The name of the corporation is **BRADFORD HILLS HOMEOWNERS' ASSOCIATION, INC.**, hereinafter called the "Association".

## ARTICLE II

The principal office of the Association is located at 301 Stahlman Building, Nashville, Tennessee. 37201.

## ARTICLE III

Paul E. Johnson, whose address is 302 Dyer Lane, Brentwood, Tennessee. 37027, is hereby appointed the initial registered agent of this Association.

## ARTICLE IV

## PURPOSE AND POWERS OF THE ASSOCIATION

This Association does not contemplate pecuniary gain or profit to the members thereof, and the specific purposes for which it is formed are to provide for maintenance, preservation and architectural control of the residence Lots and Common Area within that certain tract of property described in Exhibit A known as Bradford Hills, Section One, a Residential P.U.D., attached hereto and being a part of the entire development described in Exhibit B attached hereto and to promote the health, safety and welfare of the residents within the above-described property and any additions thereto as may hereafter be brought within the jurisdiction of this Association for this purpose to:

(a) exercise all of the powers and privileges and to



Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 69 of 99 PageID #: 90

perform all of the duties and obligations of the Association as set forth in that certain Declaration of Covenants, Conditions and Restrictions, hereinafter called the "Declaration", applicable to the property and recorded or to be recorded in the Office of the Register of Deeds, Nashville, Davidson County, Tennessee, and as the same may be amended from time to time as therein provided, said Declaration being incorporated herein as if set forth at length.

(b) fix, levy, collect and enforce payment by any lawful means, all charges or assessments pursuant to the terms of the Declaration; to pay all expenses in connection therewith and all office and other expenses incident to the conduct of the business of the Association, including all licenses, taxes or governmental charges levied or imposed against the property of the Association.

(c) acquire (by gift, purchase or otherwise), own, hold, improve, build upon, operate, maintain convey, sell, lease, transfer, dedicate for public use or otherwise dispose of real or personal property in connection with the affairs of the Association:

(d) borrow money, and with the assent of two-thirds (2/3) of each class of members mortgage, pledge, deed in trust, or hypothecate any and all of its real or personal property as security for money borrowed or debts incurred:

(e) dedicate, sell or transfer all or any part of the Common areas to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members. No such dedication or transfer shall be effective unless an instrument has been signed by two-thirds (2/3) of each class of members, agreeing to such dedication, sale or transfer;

(f) participate in mergers and consolidations with other nonprofit corporations organized for the same purposes or annex additional residential property and Common Area, provided that any such merger, consolidation or annexation shall have the assent of two-thirds (2/3) of each class of members;

(g) have and to exercise any and all powers, rights and privileges which a corporation organized under the Non-Profit Corporation Law of the State of Tennessee by law may now or hereafter have or exercise.

## ARTICLE V

## MEMBERSHIP

Every person or entitiy who is a record owner of a fee or undivided fee interest in any Lot which is subject by covenants of record to assessment by the Association, including contract



Case 3:25-cv-00930 Document 1-1 Filed 08/15/25 Page 70 of 99 PageID #: 91

sellers, shall be a member of the Association. The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation. Membership shall be appurtenant to and may not be separated from ownership of any Lot which is subject to assessment by the Association.

## ARTICLE VI

## VOTING RIGHTS

The Association shall have two classes of voting membership:

Class A. Class A members shall be all Owners, with the exception of the Declarant, and shall be entitled to one vote for each Lot owned. When more than one person holds an interest in any Lot, all such persons shall be members. The vote for such Lot shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any Lot.

Class B. The Class B member(s) shall be the Declarant (as defined in the Declaration), and shall be entitled to three (3) votes for each Lot owned. The Class B membership shall cease and be converted to a Class A membership on the happening of either of the following events, whichever occurs earlier:

(a) when the total votes outstanding in the Class A membership equal the total votes outstanding in the Class B membership; or

(b) on January 1, 1998.

## ARTICLE VII

## BOARD OF DIRECTORS

The affairs of this Association shall be managed by the Board of three (3) Directors, who need not be members of the Association. The number of directors may be changed by amendment of the By-Laws of the Association. The names and addresses of the persons who are to act in the capacity of directors until the selection of their successors are:

| NAME | ADDRESS |
| --- | --- |
| Paul E. Johnson | 302 Dyer Lane<br>Brentwood, Tennessee. 37027 |
| Maxine Sullivan | 302 Dyer Lane<br>Brentwood, Tennessee. 37027 |

Fred Yazdian

808 Harpeth Trace Place
Nashville, Tennessee.

At the first annual meeting the members shall elect one director for the term of one year, one director for a term of two years and one director for a term of three years; and at each meeting thereafter the members shall elect replacement directors for a term of three years.

BOOK 8071 PAGE 524

## ARTICLE VIII

## DISSOLUTION

The Association may be dissolved with the assent given in writing and signed by not less than two-thirds (2/3) of each class of members. Upon dissolution of the Association, other than incident to a merger or consolidation, the assets of the Association shall be dedicated to an appropriate public agency to be used for purposes similar to those for which this Association was created. In the event that such dedication is refused acceptance, such assets shall be granted, conveyed and assigned to any nonprofit corporation, association, trust or other organization to be devoted to such similar purposes.

## ARTICLE IX

## DURATION

The corporation shall exist perpetually. This corporation is a mutual benefit corporation and not a religious corporation.

## ARTICLE X

## AMENDMENTS

Amendment of these Articles shall require the assent of 75 percent (75%) of the entire membership.

## ARTICLE XI

## FHA/VA APPROVAL

As long as there is a Class B membership, the following actions will require the prior approval of the Federal Housing Administration or the Veterans Administration; annexation of additional properties, mergers and consolidations, mortgaging of Common Area, dedication of Common Area, dissolution and amendment of these Articles.

**IN WITNESS WHEREOF,** for the purpose of forming this corporation under the Laws of the State of Tennessee, I, the undersigned, constituting the incorporator of this Association, have executed these Articles of Incorporation this 16th day of March, 1990.

Paul E. Johnson
INCORPORATOR / PAUL E. JOHNSON

1598 0003
1598 0043

# EXIBIT A



Land in Davidson County, Tennessee, being Section One of Bradford Hills, a Residential P.U.D. of record in Book 7900 , pages 110-112, Register's Office for Davidson County, Tennessee, described as follows:

Starting at a point on the Westerly margin of Nolensville Road, said point being the most Northeasterly corner of Lot One on the plan of a resubdivision of Country Acres, as of record in Book 5210, Page 134, Register's Office Davidson County, Tennessee; thence with the Northerly line of said Lot One, South 87 degrees 48 minutes 30 seconds West, a distance of 200.02 feet to the POINT OF BEGINNING; thence continuing S 87 degrees 48 minutes 30" West a distance of 545.23 feet to a point; thence with the common line of the herein-described tract and the Surrey East states property as of record in Book 5869, page 940, Register's Office Davidson County, Tennesse, North 89 degrees 01 minutes 27seconds West, a distance of 303.80 feet to a point; thence continuing South 05 degrees 41 minutes 57 seconds West a distance of 572.91 feet to a point; thence leaving the East Easterly line of said Surrey East states property and severing said Gillespie property the following calls:

North 60 degrees 03 minutes 18 seconds West a distance of 134.95 feet to a point; thence

North 35 degrees 50 minutes 45 seconds West a distance of 452.00 feet to a point; thence

South 54 degrees 09 minutes 15 seconds West a distance of 115.00 feet to a point; thence

South 35 degrees 50 minutes 45 seconds East a distance of 32.03 feet to a point; thence

South 54 degrees 09 minutes 15 seconds West a distance of 126.00 feet to a point; thence

North 32degrees 58 minutes 24 seconds West a distance of 161.30 feet to a point; thence with a curve to the right having a radius of 1363.64 feet, a delta of 00 degrees 06 minutes 11 seconds, a chord bearing of North 57 degrees 04 minutes 41 seconds East, an arc distance of 2.45 feet to a point; thence continuing

North 32 degrees 57 minutes 14 seconds West a distance of 2.45 feet to a point; thence

North 07 degrees 35 minutes 04 seconds West a distance of 75.88 feet to a point; thence

North 07 degrees 15 minutes 23 seconds East a distance of 84.00 feet to a point; thence

North 82 degrees 44 minutes 37 seconds West a distance of 23.90 feet to a point; thence

North 07 degrees 15 minutes 23 seconds East a distance of 130.00 feet to a point; thence

North 11 degrees 27 minutes 42 seconds East a distance of 68.18 feet to a point; thence

South 56 degrees 34 minutes 56 : East a distance of 63.51 feet to a point thence

South 83 degrees 23 minutes 59 seconds East a distance of 122.17 feet to a point; thence

North 78 degrees 27 minutes 58 seconds East a distance of 108.64 feet to a point; thence
North 80 degrees 13 minutes 50 seconds East a distance of 68.64 feet to a point; thence
North 65 degrees 03 minutes 18 seconds East a distance of 41.40 feet to a point; thence
North 72 degrees 25 minutes 56 seconds East a distance of 64.00 feet to a point; thence
North 81 degrees 29 minutes 06 seconds East a distance of 152.06 feet to a point; thence
North 87 degrees 11 minutes 19 seconds East a distance of 149.80 feet to a point; thence
North 23 degrees 41 minutes 29 seconds East a distance of 94.16 feet to a point; thence
North 03 degrees 19 minutes 42 seconds West a distance of 132.10 feet to a point; thence
North 89 degrees 20 minutes 24 seconds East a distance of 60.44 feet to a point; thence
South 17 degrees 58 minutes 13 seconds East a distance of 134.73 feet to a point; thence
South 34 degrees 09 minutes 58 seconds East a distance of 120.22 feet to a point; thence
North 82 degrees 42 minutes 13 seconds East a distance of 58.81 feet to a point; thence
North 75 degrees 17 minutes 57 seconds East a distance of 185.12 feet to a point; thence
North 61 degrees 56 minutes 18 seconds East a distance of 70.84 feet to a point; thence
North 66 degrees 04 minutes 23 seconds East a distance of 378 feet to a point; thence
South 13 degrees 42 minutes 49 seconds East a distance of 171.85 feet to a point; thence
South 01 degrees 11 minutes 00 seconds West a distance of 90.00 feet to a point; thence
South 88 degrees 49 minutes 00 seconds East a distance of 150.71 feet to a point; thence with a curve to the left having a radius of 30.00 feet, a delta of 88 degrees 38 minutes 29 seconds, a chord bearing of North 46 degrees 51 minutes 45 seconds East, an arc distance of 46.41 feet to a point; thence South 87 degrees 27 minutes 29 seconds East a distance of 10.00 feet to a point in the Westerly margin of Nolensville Road; thence with the Westerly margin of Nolensville Road, and with a curve to the left having a radius of 2490.70 feet, a delta of 02 degrees 43 minutes 02 seconds, a chord bearing of South 01 degrees 11 minutes 00 seconds West, an arc distance of 118.12 feet to a point; thence leaving said margin of Nolensville Road South 89 degrees 49 minutes 29 seconds West a distance of 10.00 feet to a point; thence with a curve to the left having a radius of 30.00 feet, a delta of 88 degrees 38 minutes 29 seconds, a chord bearing of North 44 degrees 29 minutes 45 seconds West, an arc distance of 46.41 feet to a point; thence North 88 degrees 49 minutes 00 seconds West a distance of 150.71 feet to a point; thence South 00 degrees 42 minutes 17 seconds East a distance of 291.13 feet to the POINT OF BEGINNING, containing 21.19 acres,

**EXHIBIT A (continued)**

BOOK 8071 PAGE 527

more or less.

Being part of the same property conveyed to Gillespie Meadows, Inc. by deed from C.A. Gillespie, III, et ux, et al, of record in Book 7964, page 770, said Register's Office.

**EXHIBIT B**



Land lying in the 31st Councilmanic District of Davidson County, Tennessee, described according to unrecorded surveys made by Anderson-Delk & Associates, dated July 24, 1989 and August 9, 1989, as follows, to-wit:

Beginning at a point in the Westerly margin of Nolensville Road, said point being the most Northeasterly corner of Lot 1 on the plan of a resubdivision of Country Acres, as of record in Book 5210, page 134, Register's Office Davidson County, Tennessee; thence with the Northerly line of said Lot 1, South 87 degrees 48 minutes 30 seconds West a distance of 745.25 feet to a point; thence with the common line of the herein-described tract and the Surrey Estates, Inc. property of record in Book 5869, Page 940, Register's Office Davidson County, Tennessee, North 89 degrees 01 minutes 27 seconds West a distance of 303.80 feet to a point; thence continuing South 05 degrees 41 minutes 57 seconds West a distance of 924.82 feet to a point; thence with the common line of the herein-described tract and the Charles C. Morrow, trustee property as of record in Book 4110, Page 839, Register's Office Davidson County, Tennessee, North 70 degrees 38 minutes 04 seconds West a distance of 58.44 feet to a point; thence continuing south 15 degrees 51 minutes 06 seconds East a distance of 837.66 feet to a point; thence with the Northerly line of the Charles E. Cardwell property of record in Book 5266, Page 45, Register's Office Davidson County, Tennessee, North 83 degrees 55 minutes 34 seconds West a distance of 230.59 feet to a point; thence with the Westerly line of said Cardwell property South 06 degrees 12 minutes 36 seconds West a distance of 79.00 feet to a point; thence with the Northerly line of the Surrey Estates, Inc. property as of record in Book 5869, Page 936, Register's Office Davidson County, Tennessee, South 87 degrees 19 minutes 56 seconds West a distance of 213.06 feet to a point; thence with a fence line described as the common line of the herein-described tract and said Surrey Estates (formerly Holt) property in Book 2905, Page 453, Register's Office Davidson County, Tennessee, the following calls: North 70 degrees 02 minutes 12 seconds West a distance of 208.49 feet to a point; thence North 73 degrees 47 minutes 01 seconds West a distance of 337.72 feet to a point; thence North 80 degrees 52 minutes 13 seconds West a distance of 200.48 feet to a point; thence North 88 degrees 57 minutes 00 seconds West a distance of 98.28 feet to a point; thence South 84 degrees 39 minutes 14 seconds West a distance of 412.47 feet to a point; thence North 73 degrees 31 minutes 56 seconds West a distance of 146.30 feet to a point; thence North 40 degrees 44 minutes 40 seconds West a distance of 200.76 feet to a point; thence North 70 degrees 17 minutes 38 seconds West a distance of 173.50 feet to a point; thence North 77 degrees 10 minutes 40 seconds West a distance of 205.29 feet to a point; thence with the Easterly line of Holt Hills, Section 3, as of record in Book 5200, Page 306, Register's Office Davidson County, Tennessee, North 04 degrees 45 minutes 48 seconds East a distance of 2886.34 feet to a point; thence leaving said line of Holt Hills, Section 3, South 87 degrees

25 minutes 08 seconds East a distance of 482.43 feet to a point; thence with the Southerly line of Forest Acres Estates, Section 2, as of record in Book 4175, Page 128, Register's Office Davidson County, Tennessee, South 84 degrees 35 minutes 19 seconds East a distance of 1272.07 feet to a point; thence continuing South 84 degrees 07 minutes 20 seconds East a distance of 966.30 feet to a point; thence with the Westerly line of the K. C. Cramer and E. A. Beasley property of record in Book 6737, Page 839, Register's Office Davidson County, Tennessee South 17 degrees 53 minutes 21 seconds East a distance of 329.60 to a point; thence with the Westerly line of said Cramer and Beasley property of record in Book 7901, Page 739, Register's Office Davidson County, Tennessee South 03 degrees 47 minutes 39 seconds West a distance of 343.95 feet to a point; thence continuing South 82 degrees 34 minutes 00 seconds East a distance of 265.00 feet to a point in the Westerly margin of Nolensville Road; thence with said margin of Nolensville Road, South 07 degrees 26 minutes 00 seconds West, a distance of 28.76 feet to a point; thence continuing with a curve to the left having a radius of 2490.70 feet, a delta of 13 degrees 22 minutes 52 seconds, a Chord bearing of South 00 degrees 44 minutes 34 seconds West, an arc distance of 581.69 feet to the POINT OF BEGINNING, containing 177.04 acres, more or less.

INCLUDED BUT EXPRESSLY EXCLUDED from the above described tract of land are two (2) parcels or lots of land, described as follows, to-wit:

**PARCEL ONE:** Being a 1.19 more or less acre tract of land lying in the 31st Councilmanic District of Davidson County, Tennessee, and being Lot 1 on the proposed plan of Gillespie Meadows Commercial P.U.D., and being more particularly described as follows:

Starting at a point on the Westerly margin of Nolensville Road, said point being the most Northeasterly corner of Lot 1 on the plan of a resubdivision of Country Acres, as of record in Book 5210, page 134, Register's Office Davidson County, Tennessee; thence with the Northerly line of said Lot 1, South 87 degrees 48 minutes 30 seconds West a distance of 10.02 feet to the POINT of BEGINNING; thence continuing South 87 degrees 48 minutes 30 seconds West a distance of 190.00 feet to a point; thence leaving the Northerly line of said Lot 1, and severing said Gillespie property, the following calls: North 00 degrees 42 minutes 17 seconds West a distance of 219.13 feet to a point; thence South 88 degrees 49 minutes 00 seconds East a distance of 150.71 feet to a point; thence with a curve to the right having a radius of 30.00 feet, a delta of 88 degrees 38 minutes 29 seconds, a chord bearing of South 44 degrees 29 minutes 45 seconds East, an arc distance of 46.41 feet to a point lying 10 feet Westerly of the Westerly margin of Nolensville Road; thence running parallel to and 10 feet Westerly from the Westerly margin of Nolensville Road, and with a curve to the left, having a radius of 2500.70 feet, a delta of 05 degrees 45 minutes 27 seconds, a chord bearing of

South 03 degrees 03 minutes 14 seconds East, an arc distance of 251.29 feet to the POINT OF BEGINNING, containing 1.19 acres, more or less.

**PARCEL TWO:** Being a 1.33 more or less acre tract of land lying in the 31st Councilmanic District of Davidson County, Tennessee, and being Lot 2 on the proposed plan of Gillespie Meadows Commercial P.U.D., and being more particularly described as follows:

Starting at a point on the Westerly margin of Nolensville Road, said point being the most Northeasterly corner of Lot 1 on the plan on a resubdivision of Country Acres, as of record in Book 5210, page 134, Register's Office Davidson County, Tennessee; thence with the Northerly line of said Lot 1, South 87 degrees 48 minutes 30 seconds West a distance of 200.02 feet to a point; thence leaving the Northerly line of said Country Acres Lot 1, North 00 degrees 42 minutes 17 seconds West a distance of 291.13 feet to a point; thence crossing the proposed right-of-way of Gillespie Drive, North 01 degrees 11 minutes 00 seconds East, a distance of 60.00 feet to the POINT OF BEGINNING: thence continuing North 01 degrees 11 minutes 00 seconds East a distance of 90.00 feet to a point; thenc North 13 degrees 42 minutes 49 seconds West a distance of 215.85 feet to a point; thence South 82 degrees 34 minutes 00 seconds East a distance of 255.00 feet to a point lying 10 feet Westerly of the Westerly margin of Nolensville Road; thence running parallel with and 10 feet Westerly from said margin of Nolensville Road, South 07 degrees 26 minutes 00 seconds West a distance of 28.76 feet to a point; thence continuing, and with a curve to the left having a radius of 2500.70 feet, a delta of 04 degrees 53 minutes 29 seconds, a chord bearing of South 04 degrees 59 minutes 15 seconds West, an arc distance of 213.49 feet to a point; thence with a return curve to the right having a radius of 30.00 feet, a delta of 88 degrees 38 minutes 29 seconds, a chord bearing of South 46 degrees 51 minutes 45 seconds West, an arc distance of 46.41 feet to a point on the Northerly margin of proposed Gillespie Drive; thence with said Northerly margin, North 88 degrees 49 minutes 00 seconds West, a distance of 150.71 feet to the POINT OF BEGINNING, containing 1.33 acres, more or less.

Being the same property conveyed to Gillespie Meadows, Inc. by deed from C. A. Gillespie, III, et ux, et al, of record in Book 7964, page 770, said Register's Office.

# Re: New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Monsieur Shawnellias Burgess (shawnellias@yahoo.com)

To: customerservice@metropolitanpropertymgmt.com

Date: Friday, March 28, 2025 at 05:02 PM CDT

None of this is of my concern. I'm not in violation. So have a great weekend.

*Monsieur Shawnellias Burgess*
***Envoyé de mon iPhone Seize Pro***
***"2024 je suis prêt"***
***ΚΑΨ/ΦΝπ***

<Bradford Hills HOA - Amendment to ByLaws - Filed 11-12-2024.pdf>
<Rules and Regulations 2025.pdf>
<Bradford Hills Fine Policy 2025.pdf>

> On Mar 28, 2025, at 2:45 PM, Metropolitan Property Management <customerservice@metropolitanpropertymgmt.com> wrote:
>
> Mr. Burgess
>
> Unfortunately, it is not a mistake.
>
> There was an approved amendment filed in November 2024 that appointed a Rules and Regulations committee. Please see page 2 of the amendment. I have also attached the rules and regulations and fine policy for your records, if you do not have them.
>
> Sincerely,
>
> Kathy Holbrook
>
> Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
> (615) 915-3204 | www.mpnashville615.com
>
> METROPOLITAN
> PROPERTIES
>
> **For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**



Exhibit 12

# New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Saturday, March 29, 2025 at 10:27 PM CDT

Actually Mr. Burgess its does.

Please see the sign policy below.

None of this is of my concern. I'm not in violation. So have a great weekend.

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

Sincerely,

Kathy Holbrook

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**



Exhibit 13

# Re: New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Monsieur Shawnellias Burgess (shawnellias@yahoo.com)

To: customerservice@metropolitanpropertymgmt.com

Date: Sunday, March 30, 2025 at 09:23 AM CDT

Proceed at your own risk. Do what you feel you must and I shall do the same. Have a great weekend.

*Monsieur Shawnellias Burgess*

*ΚΑΨ/ΦΝπ*

*"2023 je suis prêt"*

On Saturday, March 29, 2025 at 10:27:13 PM CDT, Metropolitan Property Management <customerservice@metropolitanpropertymgmt.com> wrote:

Actually Mr. Burgess its does.

Please see the sign policy below.

None of this is of my concern. I'm not in violation. So have a great weekend.

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

Sincerely,

Kathy Holbrook

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

Exhibit 14

New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Monday, March 31, 2025 at 01:38 PM CDT

Mr. Burgess

Thank you for letting me know.

I hope you have a great day.

**First Notice**
**Author: Monsieur Burgess** Recipients (BCC)
**Sent To:** Manager Formatted Note

Reply | Reply All | **03/30/2025 9:23:28 AM**

Proceed at your own risk. Do what you feel you must and I shall do the same. Have a great weekend.

Monsieur Shawnellias Burgess
???/F?p
"2023 je suis prêt"

Sincerely,

Kathy Holbrook

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**



Exhibit 15

# 2nd Notice - Fine Assessed - Bradford Hills Homeowners Association Inc. - [#XN3707536]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Wednesday, April 30, 2025 at 10:32 PM CDT

Dear Monsieur Burgess,

Please see attachment for additional detail. During an inspection conducted on 04/28/2025 by the Bradford Hills Homeowners Association Inc. Covenants Enforcement Committee or management team, the following violation of the covenants was noted:

Signs - Bradford Hills-

A $50.00 fine has been added to your account. This item has been moved to Second Notice.

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

Sincerely,

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

2nd Violation.pdf
205.2 KB

Photo_04-28-25-04-23-44.jpeg
109.6 KB

Photo_04-28-25-04-23-35.jpeg
116.6 KB

Exhibit 16

# Re: 2nd Notice - Fine Assessed - Bradford Hills Homeowners Association Inc. - [#XN3707536]

From: Monsieur Shawnellias Burgess (shawnellias@yahoo.com)

To: customerservice@metropolitanpropertymgmt.com

Date: Sunday, May 4, 2025 at 04:56 PM CDT

Good Day,

Here's my response to your illegal fines. Please take heed. Thanks.

*Monsieur Shawnellias Burgess*
ΚΑΨ/ΦΝπ
*"2023 je suis prêt"*

On Wednesday, April 30, 2025 at 10:32:19 PM CDT, Metropolitan Property Management <customerservice@metropolitanpropertymgmt.com> wrote:

Dear Monsieur Burgess,

Please see attachment for additional detail. During an inspection conducted on 04/28/2025 by the Bradford Hills Homeowners Association Inc. Covenants Enforcement Committee or management team, the following violation of the covenants was noted:

Signs - Bradford Hills-

A $50.00 fine has been added to your account. This item has been moved to Second Notice.

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

Sincerely,

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN
PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

Letter To HOA (Signed) Regarding Illegal Fines 5.4.25.pdf
813.7 KB



Exhibit 17

*Monsieur Shawnellias Burgess*
*3040 Cody Hill Rd*
*Nashville, TN 37211*
*Shawnellias@yahoo.com*

*May 4, 2025*

*Bradford Hills HOA*
*Metropolitan Property Management*
*4521 Trousdale Drive*
*Nashville, TN 37204*

*RE: April 30th Fine in Violation of Court Order and Breach of Contract*

*To Whom It May Concern,*

*On or around 4/30/25, I received an email notice that 3040 Cody Hill Road property has been assessed a fine for signs in the yard. As the manager had been notified prior, the property is not in violation of the HOA rules regarding signs in the yard. The signs are legal and valid:*

1. *By Court Order (Case 20C-1835),*
2. *By Contract/Agreement,*
3. *By Metro Nashville Code (Guard Dogs)*

*Please remove the fines immediately or I'll be forced to file legal suit and seek damages against the Board, Management/Manager and the HOA. You may want to contact the HOA's previous litigation attorney Brad Craig at (615) 259-1366 or bcraig@lewisthomason.com. The HOA or its insurance carrier paid quite a bit to have this all resolved and I doubt they would encourage you to violate the court's order or the contract.*

*The time to remove the fines and issue a notice regarding it expires in 14 days or May 18th.*

*Thanks in advance,*

*Monsieur Shawnellias Burgess*

*615-579-5752*

Exhibit 18

# New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Metropolitan Property Management (customerservice@metropolitanpropertymgmt.com)

To: shawnellias@yahoo.com

Date: Monday, May 5, 2025 at 01:32 PM CDT

Mr. Burgess

The Board is requesting documentation regarding the signs in the yard you have stated.

1. By Court Order (Case 20C-1835)
2. By Contract/Agreement
3. By Metro Nashville Code (Guard Dogs)

Sincerely,

Kathy Holbrook

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

Letter To HOA (Signed) Regarding Illegal Fines 5.4.25.pdf
813.7 KB



Exhibit 19

# Re: New Message - Bradford Hills Homeowners Association Inc. - From Kathy Holbrook - [#XN3707536]

From: Monsieur Shawnellias Burgess (shawnellias@yahoo.com)

To: customerservice@metropolitanpropertymgmt.com

Date: Monday, May 5, 2025 at 05:14 PM CDT

Good Day,

The Board has everything in its possession. The Board's attorney even drafted the agreement which was signed by James Summar. Again, call the HOA's attorney Brad Craig or get Scott Weiss involved as he should also have knowledge of the whereabouts of the documents. Thanks. If the Board has poor communications and/or record keeping that's not on me. I perceive it as negligence but I guess we'll see. Every time there's new board members or management company, you harass me with the same BS as if I've lived here for 15 years and someone just noticed my signs. Ridiculous. Have a good day.

*Monsieur Shawnellias Burgess*

ΚΑΨ/ΦΝπ

"2023 je suis prêt"

On Monday, May 5, 2025 at 01:32:48 PM CDT, Metropolitan Property Management <customerservice@metropolitanpropertymgmt.com> wrote:

Mr. Burgess

The Board is requesting documentation regarding the signs in the yard you have stated.

1. By Court Order (Case 20C-1835)
2. By Contract/Agreement
3. By Metro Nashville Code (Guard Dogs)

Sincerely,

Kathy Holbrook

Metropolitan Property Management on behalf of Bradford Hills Homeowners Association Inc.
(615) 915-3204 | www.mpnashville615.com

METROPOLITAN PROPERTIES

**For all after hour emergencies, please call 615-915-3204 to be connected to an on call manager.**

Exhibit 20

# Fine Removal On Property Located At 3040 Cody Hill Road

From: Monsieur Shawnellias Burgess (shawnellias@yahoo.com)

To: customerservice@metropolitanpropertymgmt.com; kathy@mpmnashville.com

Date: Friday, August 1, 2025 at 10:14 AM CDT

Good Day,

See attached letter regarding 4/25/25 fines. Thanks.

*Monsieur Shawnellias Burgess*

*ΚΑΨ/ΦΝπ*

***"2025 je suis prêt"***

Letter to HOA (Signed) Regarding Latest Fine (Request To Remove) 8.1.25.pdf
3.2 MB

Exhibit 21

Monsieur Shawnellias Burgess
3040 Cody Hill Rd
Nashville, TN 37211
Shawnellias@yahoo.com

August 1, 2025

Bradford Hills HOA
Metropolitan Property Management
4521 Trousdale Drive
Nashville, TN 37204

RE: April 30th Fine still charged to may account

To Whom It May Concern,

I have previously asked that that HOA remove the fines placed on or around 4/30/25. These fines are in violation of a court order and a settlement agreement.

If the fines are not rescinded by 8/8/25, I will have no other option but to seek legal redress. Please advise me in writing of your intentions so that I may act accordingly.

Thanks in advance.

Monsieur Shawnellias Burgess

615-579-5752

Rien que pour vos yeux!!

Exhibit 22

Monsieur Shawnellias Burgess
3040 Cody Hill Rd
Nashville, TN 37211
Shawnellias@yahoo.com

May 5, 2025

Bradford Hills HOA
Metropolitan Property Management
4521 Trousdale Drive
Nashville, TN 37204

RE: April 30th Fine in Violation of Court Order and Breach of Contract

To Whom It May Concern,

On or around 4/30/25, I received an email notice that 3040 Cody Hill Road property has been assessed a fine for signs in the yard. As the manager had been notified prior, the property is not in violation of the HOA rules regarding signs in the yard. The signs are legal and valid:

1. By Court Order (Case 20C-1835),
2. By Contract/Agreement,
3. By Metro Nashville Code (Guard Dogs)

Please remove the fines immediately or I'll be forced to file legal suit and seek damages against the Board, Management/Manager and the HOA. You may want to contact the HOA's previous litigation attorney Brad Craig at (615) 259-1366 or bcraig@lewisthomason.com. The HOA or its insurance carrier paid quite a bit to have this all resolved and I doubt they would encourage you to violate the court's order or the contract.

The time to remove the fines and issue a notice regarding it expires in 14 days or May 18th.

Rien que pour vos yeux!!

Thanks in advance.

Monsieur Shawnellias Burgess

615-579-5752

CC: HOA Board: Christopher Cummings & James Summar

HOA attorney Scott Weiss

Exhibit 1

METROPOLITAN
PROPERTIES

Bradford Hills Homeowners Association Inc.
4521 Trousdale Drive
Nashville, TN 37204

April 28, 2025

Monsieur Burgess
3040 Cody Hill Rd
Nashville, TN 37211



RE: 3040 Cody Hill Rd, Nashville, TN 37211

Dear Monsieur Burgess,

During an inspection of Bradford Hills Homeowners Association Inc., the following violation(s) of the governing documents of Bradford Hills Homeowners Association Inc. were noted at your property: ***Signs - Bradford Hills -***

***This item has been moved to Second Notice.***

Unless otherwise specifically allowed in these restrictions, no sign of any kind shall be displayed to the public view on any lot except one (1) sign of not more than five (5) square feet advertising the property for sale or rent.
All local and state restrictions are to be followed for guidance on campaign signs.
Temporary one (1) week grace period for yard sales, birthdays, graduations or like events shall be allowed.
Security/alarm/dog warning signs shall be limited to one (1) per visible side.
The Yard of the Month sign is allowed to stay for the whole month.

This is the second time that you have been notified regarding this violation, resulting in a 50.00 fine being added to your HOA account. If it is not possible for you to correct the violation(s) within the allotted time, please contact me to discuss your plans for correcting the violation(s) and to give me an estimated completion date.

To ensure you understand the urgency and importance of maintaining the quality appearance of all the homes in Bradford Hills Homeowners Association Inc., a copy of the Governing Documents of Bradford Hills Homeowners Association Inc., can be found by navigating to https://portal.mpnashville615.com. Please note that any subsequent violation notices may be accompanied by a fine.

Thank you in advance for helping to keep Bradford Hills Homeowners Association Inc. an attractive and desirable place to live.

Exhibit 2

Please feel free to contact me if you have any questions. My email address is kathy@metropolitanpropertymgmt.com and the office number is 615.915.3204.

Sincerely,

Kathy Holbrook
Property Manager, Bradford Hills Homeowners Association Inc.
Metropolitan Properties
https://portal.mpnashville615.com

**Bradford Hills Homeowners' Association, Inc.**
**Board of Directors Meeting**
**May 20, 2024**

A meeting of the Board of Directors for Bradford Hills Homeowners' Association, Inc. was held on Monday, May 20, 2024, 11:00a.m. at Edley's.

**Call to Order–Establishment of Quorum**

James Summar, President called the meeting to order at 11:05a.m.

A quorum was established with the following directors:
*James Summar. Christopher Cummings, Lindsay Vrabic and Yordan Porashki*
*Absent: John Pyle*

Kathy Holbrook represented the management company, Metropolitan Properties.

**BUSINESS DISCUSSED**

**Meeting with Attorney, Scott Weiss**
The Board discussed recommendations from the attorney.

The Board will work on the amendment to the documents. This will be presented to the owners at the annual meeting in October 2024.

Jes, will send documents for the Board to review.

**Traffic Calming on Bradford Hills**
The Board thought the meeting went well and it would get approved.
The discussion was regarding adding 3 speed cushions, 2 moving speed signs and adding bull belts.

Jes will reach out to HUB to repaint white and yellow lines down Bradford Hills.

**Relocating of Entrance**
This item has been deferred until further research.

**Other Discussion**
- Management was requested to contact Metro Water to cancel the account.

**ADJOURNMENT**

The next meeting of the Board will be held on Monday, June 24, 2024, at Edley's.

There being no further business to come before the Board, a motion carried to adjourn at 12:35p.m.

Exhibit 23

**Bradford Hills Homeowners' Association, Inc.**
**Board of Directors Meeting**
**February 26, 2024**

A meeting of the Board of Directors for Bradford Hills Homeowners' Association, Inc. was held on Monday, February 26, 2024, 11:00a.m. at Edley's.

## Call to Order–Establishment of Quorum

James Summar, President called the meeting to order at 11:07a.m.

A quorum was established with the following directors:
*James Summar. Christopher Cummings, Lindsay Vrabic and Yordan Porashki*
*Absent: John Pyle*

Kathy Holbrook represented the management company, Metropolitan Properties.

## APPROVAL OF PRIOR MINUTES

The Board reviewed minutes from the previous meeting held on Monday, January 29, 2024. A motion was made by Yordan Porashki and seconded by Christopher Cummings to accept the minutes of the meeting as presented. All Board members present were in favor, motion carried.

## FINANCIAL REPORT

There were no financial reports available due to the management change.

## MANAGERS REPORT

Management presented a copy of the managers' report from January 2024.

## BUSINESS DISCUSSED

### Rental Fee

Management was requested to reach out to Attorney, Scott Weiss to find out what the process was for the rental fee that was approved by the prior Board.

The Board discussed writing a new amendment under justification this is not a renter's community.

### Drainage Ditch Between Cold Creek Trail and Bradford Hills Cove

Management was requested to ask Proctor & Graves to look at the drainage ditch and give a scope of work. The Board is looking for options and an urgency plan. Metro Water is directing storm water and causing erosion.

**Possible Special Assessment, CCR Article IV Sec 4 & 5**
The Board held a discussion on doing a special assessment after getting bids for the drainage area. This will be presented at the annual meeting along with dues increase.

**Governing Documents**
Management was requested to reach out to Attorney, Scott Weiss to request a meeting with him on Monday, April 29, 2024.

The Board will work on their questions to present to the attorney and submit them prior to the March 25, 2024, meeting.

**ADJOURNMENT**

The next meeting of the Board will be held on Monday, March 25, 2024, at Edley's 11:00am.

The following meeting of the Board has been scheduled for Monday, April 29, 2024

There being no further business to come before the Board, a motion carried to adjourn at 12:40p.m.

**Bradford Hills Homeowners' Association, Inc.**
**Board of Directors Meeting**
**January 29, 2024**

A meeting of the Board of Directors for Bradford Hills Homeowners' Association, Inc. was held on Monday, January 29, 2024, 11:00a.m. at Edley's.

**Call to Order–Establishment of Quorum**

James Summar, President called the meeting to order at 11:07a.m.

A quorum was established with the following directors:

*James Summar. Christopher Cummings, Lindsay Vrabic and Yordan Porashki*
*Absent: John Pyle*

Kathy Holbrook represented the management company, Metropolitan Properties.

**APPROVAL OF PRIOR MINUTES**

There were no minutes available for the prior Board meeting due to management change.

**FINANCIAL REPORT**

There were no financial reports available due to the management change.

**BUSINESS DISCUSSED**

**944 Fallview Trail**
The Board has been requesting the owner of 944 Fallview Trail to have the tree removed that has fallen on the home. Because the owner has not done as requested.

The Board reviewed proposals presented a motion was made by Christopher Cummings and seconded by Yordan Porashki to accept the proposal presented by Looking Good Tree Service to remove the tree for $1,500. This will be billed back to the owner. All Board members present were in favor, motion carried.

**Landscape Contract**
The Board reviewed proposals submitted for the 2024 landscaping contract. After review of the proposals submitted a motion was made by Lindsey Vrabic and seconded by Christopher Cummings to approve the proposal presented by Pride Lawn Care to being January 2024. All Board members present were in favor, motion carried.

**ADJOURNMENT**

The next meeting of the Board will be held on Monday, February 26, 2024, at Edley's.

There being no further business to come before the Board, a motion carried to adjourn at 12:45p.m.

8.04.110 - Guard dogs.

It is unlawful for any person to place or maintain guard dogs in any area of the metropolitan government for the protection of persons or property unless the following provisions are met:

A. The guard dog shall be confined to the property or held by a person on a leash; or

B. The owner or other persons in control of the premises upon which a guard dog is maintained shall post warning signs stating that such a dog is on the premises. At least one such sign shall be posted at each driveway or entranceway to said premises. Such signs shall be in lettering clearly visible from either the curb line or a distance of fifty feet, whichever is less, and shall contain a telephone number where some person responsible for controlling such guard dog can be reached twenty-four hours a day.

C. The owner of the dog, and/or owner of the property in which the dog is present keeps records of training completed.

D. The above provisions shall not be applicable to (1) dogs used in law enforcement by federal, state, or local law enforcement agencies or (2) dogs used by licensed security firms which have sufficient training.

(Ord. BL2023-1688 § 1, 2023)



Exhibit 24

# RE: Burgess v. Bradford Hills HOA

From: Craig, Brad (bcraig@lewisthomason.com)

To: shawnellias@yahoo.com

Date: Friday, January 26, 2024 at 05:34 PM CST

Mr. Burgess,

Attached is the HOA's notarized signature page. I have the settlement check. Do you want me to FedEx it or have our runner hand deliver it to you?

Thanks,
Brad

LT
LEWIS THOMASON

**Brad W. Craig** Attorney at Law
**Lewis Thomason, P.C.**
424 Church St., Suite 2500 | P.O. Box 198615 | Nashville, TN 37219
Tel: 615-259-1366 | Fax: 615-259-1389
Web Page | My Bio

CONFIDENTIALITY NOTICE: This e-mail transmission and any document, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at 800-335-3930 and then delete this message and its attachments from your computer.

**From:** Monsieur Shawnellias Burgess <shawnellias@yahoo.com>
**Sent:** Thursday, January 25, 2024 2:39 PM
**To:** Craig, Brad <BCraig@LewisThomason.com>
**Subject:** Re: Burgess v. Bradford Hills HOA

Ok, thanks.

***Monsieur Shawnellias Burgess***

***ΚΑΨ/ΦΝπ***

***"2023 je suis prêt"***

Exhibit 25

THIS IS A RELEASE. READ BEFORE SIGNING.

BRADFORD HILLS HOA

BY: James E Summar Jr

ITS: Board President

STATE OF TENNESSEE )
COUNTY OF Davidson )

James Summar Jr executed and acknowledged this instrument personally before me and proved to me based on satisfactory evidence that he is person whose name is subscribed to this instrument. He acknowledged that he executed this instrument as his own free act and deed.

KATHERINE HOLBROOK STATE OF TENNESSEE NOTARY PUBLIC My Commission Expires on 05/05/2025 DAVIDSON COUNTY

NOTARY PUBLIC

Date: January 26, 2024

My Commission Expires: May 5, 2025